# White Sewing Machine Company *v.* Saxon *et al.*

## *Action on Bond.*

1. *Surety on bond; when not bound.*—A surety on a bond given to secure the faithful performance of duty by the principal on the bond to the obligee, may stipulate when he signs the bond that it shall not be delivered to the obligee unless *some other* good sureties also sign, and if the bond is delivered

[White Sewing Machine Co. v. Saxon *et al.*]

in violation of this stipulation the surety is not bound, unless having knowledge of such delivery he fails to seasonably repudiate the bond.

2. *Bond; stipulation in giving authority to deliver, part of the bond.*—The stipulation in a bond that each one signing it is bound according to its purport without regard to any understanding when he signed it that any other person should also sign before its delivery, and that the person to whom it is entrusted has absolute authority to deliver it, is a part of the bond itself and never becomes binding on a surety who signs it on condition, until the condition is complied with—the stipualtion is not his contract.

3. *Same; surety on, when estopped to deny execution.*—If a surety signs a bond and delivers it to the principal obligor to be delivered to the obligee only after other good men have signed as sureties, and the bond is delivered to the obligee without the other signatures; and if the surety whose name is on the bond is advised of this wrongful delivery and that the principle obligor is acting under the bond, and makes no objection to the obligee, he is estopped when sued on the bond to set up the condition imposed by him on the principle obligor. But the mere fact, without more, that the surety is advised that the principal obligor is acting under the bond is not notice to him that the bond has been delivered in violation of the condition.

4. *Same; what is a material and vitiating alteration.*—A bond was signed by the obligors, principal and sureties, and was taken by the principal obligor to one who was at the time agent of the obligee in and about the making of the bond, but who was not present when it was signed, and thereupon the agent took the bond and signed his name thereto as a subscribing witness in the absence and without the knowledge or consent of the sureties, and carried it off for the obligee. *Held,* that the act of the agent of the obligee in attesting the bond must be taken as the act of his principal, and as having been done after the complete execution of the bond; and that the unauthorized attestation was under the circumstances shown in this case a material and vitiating alteration as to the sureties.

5. *Same; alteration of, effect of intention in making.*—Whether the unauthorized attestation of bond by an agent of the obligee after its execution by the sureties thereon and in their absence and without their knowledge or consent must be fraudulently made in order to be a vitiating alteration as to them, is not necessary to be decided in this case, but it would seem under the decisions of this court that any material

[White Sewing Machine Co. .v. Saxon *et al*]

alteration made by one not a stranger to the contract would be vitiating whether made with fraudulent intent or not.

APPEAL from the Circuit Court of Walker. Tried before the Hon. JAMES J. BANKS!

This was an action brought by the White Sewing Machine Co. against the defendants on a bond executed by them to the company to secure the faithful performance of his duties by Saxon, the principal in the bond, as its agent in selling sewing machines. The defendants, Miller and Richardson, who were sureties on the bond, defended on the ground that they never became liable on the bond, for the reason that they signed the same on conditions which were never complied with, that other sureties were to sign the bond before its delivery, and also because of material alteration after execution. There was a replication that after the bond was delivered and the sureties knew that Saxon was acting under it they failed to make objection. The court gave the general charge for the defendants, Richardson and Miller. The other facts are stated in the opinion.

APPLING & McGUIRE, for appellant, contended, that the "other persons" who were required to be obtained as sureties should be named or the stipulation that they must sign the bond is of no force. Also that the signature of Ware as witness in the absence and without the knowledge of appellees was harmless because it was a benefit rather than an injury to them. They also contended that the sureties were estopped by the provisions contained in the bond to set up that they signed it as an escrow. The following authorities are cited: *Tindall v. Bright*, Minor 103; *Bibb v. Reid & Hoyt*, 3 Ala. 88; *Price v. Cloud*, 6 Ala. 248; *Robertson v. Coker*, 11 Ala. 466; *Firemen's Ins. Co. v. McMillan*, 29 Ala. 147; *King v. State*, 81 Ala. 92; *Smith, Stewart & Co. v. Kirkland et al.*, 81 Ala. 345; *Evans v. Daughtry*, 84 Ala. 68; *Sharpe v. Allgood*, 100 Ala. 183; *Gild v. Thomas*, 54 Ala. 414; *Daughtry v. Stewart*, 84 Ala. 69; *Pawling v. U. S.*, 4 Cranch, 218; *Moss v. Riddell & Co.*, 5 Cranch, 351; *Kennedy v. Bank*, 18 So. Rep. 400; *Hodge v. Tufts*, 22 So. Rep. 422.

COLEMAN & BANKHEAD, *contra,* contended, that it was not necessary to name the persons required by the surety to sign with him—it being his evident purpose that his obligation should be lightened by other good sureties; that the sureties were not estopped by any provision in the bond; and that the signature of the witness in the absence and without the knowledge of the sureties was a change in the conditions of the bond and vitiated it. The authorities cited are: *Gild v. Thomas,* 54 Ala. 414; *Evans v. Daughtry,* 84 Ala. 68; *Smith v. Kirkland,* 81 Ala. 345; *Ins. Co. v. McMillan,* 29 Ala. 160; *Robertson v. Coker,* 11 Ala. 466; *Bibb v. Reid,* 3 Ala. 88; 2 Am. & Eng. Ency. of Law, 2 Ed., p. 245; *Ellison v. State,* 69 Ala. 1; *Homer v. Wallace,* 11 Mass. 809; *Adams v. Frye,* 3 Metcalf, 103; *Willard v. Clarke,* 7 Metcalf 435; *Millery v. Stover,* 26 Am. Rep. 361; *Sharpe v. Allgood,* 14 So. Rep. 16; *Piedmont v. Young,* 58 Ala. 496.

McCLELLAN, C. J.—This is an action on a bond purporting to have been executed to the White Sewing Machine Co. by Saxon, Miller and Richardson to secure the faithful performance by Saxon of his duties as agent of the company. Miller and Richardson defended on the ground that they signed the bond left it with the principal obligor with the understanding and upon the condition that it was not to be delivered to the obligee, and they were not to be bound by it until and unless "four or five other good men" should sign it. It is admitted that a bond delivered in violation of a condition that certain other *named* persons should subscribe it is not binding upon the sureties who sign upon the condition; but it is insisted that the same result does not flow when the condition is that other good men or "four or five other good men" shall execute it. In *Moss v. Riddle & Co.,* 5 Cranch. 351, the plea of a surety to an action on a bond was that he delivered the instrument to a member of the partnership which was the obligee, in escrow to be his act and deed only on condition that the same should be afterwards signed, sealed and delivered by "some other friend of Welsh," the principal obligor. To this plea the plaintiffs demurred, 1st. Because a bond cannot be delivered to an obligee as an escrow. 2nd. Because the

plea does not state by what other friend of Welsh it was to have been executed. 3rd. Because it did not state by whom the execution of the bond by that other friend was to have been procured, leaving uncertain whether the condition upon which it was to become the deed of Moss was to be performed by him, or by Riddle, or by Welsh. 4th. Because the plea is repugnant, inconsistent and informal. There was a second plea intended to set up that defendant's conditional signature was obtained by fraud. The court by Chief Justice Marshall held the first plea bad on the ground that a delivery to one partner is a delivery to all, that the delivery averred in the plea was therefore a delivery to the obligee and "that a bond cannot be delivered to the obligee as an escrow." The other grounds of demurrer to the first plea are not discussed or referred to, and nothing is decided upon the question whether it was necessary for the plea to aver the name of the other person who was to sign the bond. What else is said in the opinion has reference to the question of fraud arising on the second plea.

In the case of *Guild, Register etc. v. Thomas*, 54 Ala. 414, it is said in the opinion: "The defense presented by the pleas, and sustained by the rulings on the demurrers, and the instructions given to the jury, is that the defendant signed the bond as surety only, entrusting it to the principal obligor for delivery, but with authority to deliver it only on condition that other persons joined as sureties in its execution. Without authority he delivered it, such persons not having joined in its execution." Upon this statement of what the pleas contained it was held that they presented a good defense to the action, and that the demurrers were properly overruled. It does not appear by the report of the case affirmatively whether the condition was merely that "other persons" should sign the bond or that certain named other persons should sign it. But the court must have considered this immaterial as the predicate laid down as a basis of the conclusion declared involves no specification or identification of such other persons. Upon looking to the original record in the case it is found that one of the two pleas averred a condition that the bond should be signed by Jesse Latham, while the other averred that the condition to delivery was that the bond should be signed by

"another surety." The demurrer went to both pleas together and did not assign as an infirmity in the second that the name of the other surety was not alleged. The condition proved was that laid in the first plea, that Jesse Latham was to sign the bond as surety. So that this case, while more or less persuasive that the court did not regard it essential to such a condition that the other person to sign the obligation should be named, is not a decision of the point.

In all of the many other cases decided by this court on this subject the condition averred was that other *named* persons should sign the instrument before its delivery to the obligee; and we have not been referred to any case in other jurisdictions bearing upon the question whether a surety putting a bond in escrow may stipulate that it shall not be delivered until other persons, or a given number of other persons not named or otherwise identified shall have signed it as sureties. But upon principle there would seem to be little difficulty in the point, or doubt as to its correct solution. The surety is under no obligation to sign the bond at all: his signature is his voluntary act. Nor is he under any obligation to deliver a bond having signed it. Signing for the accommodation of the principal obligor, he may put such limitations and conditions upon his favor as seem to him proper or to his interest. The whole matter is at large with him; and having constituted the principal obligor his agent to deliver the bond he may impose whatever conditions he chooses upon the act of his agent. The condition may be quite onerous; it may be very difficult of performance; it may involve uncertainty as to what is necessary to performance; but whatever it is or may involve its imposition is within his clear and unfettered right: The thing to be done not being at all obligatory on him, he can decline to do it absolutely, and he may do it upon whatever conditions, capricious or otherwise, he may elect to impose. As he may subscribe upon condition that A. B. and C. D. shall also subscribe, he may make the obligation of his signature depend upon the subscription of an hundred or a thousand other named persons. Such a condition would be more difficult of performance than a condition that four or five other good men should

subscribe as sureties, and more unreasonable, if either could be said to be unreasonable. If any condition is deemed too onerous, or unreasonable, or impossible even of performance, the holder in escrow is not thereby authorized to deliver to the obligee. He has no authority whatever to deliver until the condition, whatever it may be, has been complied with; and the obligee who knows that he is acting as the agent of the surety in making delivery is put on notice that the condition was imposed, and has not been performed. And he will not be heard to say that the surety should not have imposed such a condition, that it is unreasonable, uncertain, or even impossible, since the surety having the undoubted right to decline to sign at all, must have an equally undoubted right to determine under what circumstances and to what extent he will bind himself. And we are clear to the conclusion that if these sureties, Miller and Richardson, signed this bond upon the condition that three or four other good men should sign it before it should be delivered to the obligee, they are upon this without more not bound, the signatures of the other sureties not having been procured, the condition not having been fulfilled.

Appellant, however, insists that a different conclusion must be enforced in this case because of the fact that the bond thus delivered in escrow to Saxon and by him in violation of the condition delivered to the obligee, contained the following stipulation: "Each one signing this bond is bound according to the purport of it without any regard to any understanding that any person should also sign this instrument; and the person to whom this is intrusted has absolute authority to deliver it, and no notice of its acceptance by said company shall be required; and the same is made and shall be construed without reference to any other instrument or agreement whatever, and any claim of any arrangement or agreement with any of the signers hereof to discharge or release them or any of them shall be void and of no binding effect upon the White Sewing Machine Co. unless this bond shall be delivered up or discharged in writing by the said White Sewing Machine Co. and it is to continue in full force until so delivered or destroyed." But we do

not think this provision in the paper is of any force or operation in respect of the question being considered. It was a part of the bond itself. If the pleas of Richardson and Miller state the facts as to the bond being delivered only in escrow on a condition which was never performed, the bond nor any part of it was executed by said defendants. This stipulation itself, therefore, never became binding on Richardson or Miller; it was not their stipulation, it was not their contract, they made no contract with the plaintiff. And not only was the obligee charged with notice that notwithstanding what is thus set down in the paper which these defendants signed that paper and no part of it was binding on them if delivered in violation of the condition; but the pleas allege and the evidence without conflict proves that the obligee had actual knowledge that the paper was signed only upon condition that it should never be delivered or become a binding obligation until and unless the signatures of three or four other good men should be procured.

The plaintiff further insisted on the trial that defendants Miller and Richardson were estopped to set up the defense that said bond was delivered out of escrow in violation of said condition by the facts that they came to or were chargeable with knowledge or notice of the fact that Saxon, the principal obligor, had so delivered said bond and was carrying on a course of dealing with the plaintiff under the security supposed to be afforded by it, and with this knowledge or notice they stood by, made no objection to the wrongful delivery of the bond nor asserted its invalidity on account thereof and allowed the dealings between plaintiff and Saxon to continue, plaintiff relying upon the bond to secure the credits it allowed Saxon in the course of said dealings. The replication to the foregoing effect is in the first place sought to be supported by proof that soon after the bond was delivered in escrow, Saxon begun to carry on the business for the obligee in respect of which it was intended the bond should be plaintiff's security for his faithfulness, and continued to carry it on for about eight months during which the defaults complained of occurred, said defendants Richardson and Miller well knowing all the

while that Saxon was engaging in and carrying on that business; and it is argued that these facts were sufficient to put them on notice that the bond had been delivered to the obligee *in violation of the condition.* We do not think so. The facts may have been notice to these defendants that the bond had been delivered and that Saxon was acting under it; but, as it was Saxon's duty not to deliver and the obligee's duty not to accept the bond until the condition upon which it had been signed and placed in escrow had been complied with and as presumptions favorable to duty rather than those against its performance are always to be indulged, the defendants had a right, till they knew to the contrary, to presume that the condition had been complied with before the paper was delivered, and that Saxon was proceeding under the bond for which they had stipulated as a condition to any liability on their part, a bond signed by three or four other good men along with themselves.

But there is a tendency of evidence in the case to show that both Richardson and Miller after having actual knowledge that the bond had been delivered in violation of the condition and that Saxon was carrying on the business under it failed seasonably to repudiate responsibility upon it and allowed the dealings between plaintiff and Saxon to continue on the faith of the bond. The bond was signed by these defendants on August 16, 1893, and Saxon immediately thereupon entered upon the business to which it related, and continued therein for about eight months. Saxon testifies that four or five months "after he had been engaged in the business under said bond he told" Miller and Richardson that the bond had not been signed by any one else except them. Miller testifies that "four or five months, or may be longer, after Saxon had been selling White sewing machines here in Jasper, he went to him and asked him about the bond, and Saxon told him for the first time that he had delivered the bond without procuring said requisite number of men." It is true that this witness further testifies that this conversation with Saxon was shortly before this suit was begun, and after the letter written by witness to plaintiff on April 9, 1894, which letter is an admission of liability on the part of Miller. The suit was instituted on May 16, 1897. Richardson testifies that

"he did not know but what the condition had been .complied with till a short while before suit was brought upon the bond." Here then according to the testimony of Saxon both these defendants knew that the bond had been delivered without. the other sureties and that the business was being carried on under the bond as thus delivered, by the middle of January, 1894. The business was carried on under the bond for two months after that time and much of the indebtedness of Saxon to the plaintiff accrued during that subsequent period of two months. Miller's testimony in one part tends to corroborate Saxon as to the time he was informed of the unauthorized delivery of the bond, and in another part he says he came to this knowledge after April 9th, 1894. If they did have this knowledge in January, 1894, their failure to then repudiate the bond and continuance while the business was thereafter being carried on to allow the plaintiff to rest upon the supposed security of the bond, would be such acquiescence in and ratification of the wrongful delivery of the instrument in violation of the escrow as would estop them to insist on their non-liability in this action for that the condition upon which they signed the bond had not been complied with. Whether they had such knowledge at that time should have been left to the jury, unless the other defense advanced by them was a good defense and was proved by uncontroverted evidence.

. That other defense is, that the bond was altered after they had signed it, in this, that one Ware, who was the agent of the obligee, but who was not present at the time they or either of them signed the instrument subscribed his name thereto as an attesting witness to their signatures and that they had no knowledge or notice of this until this suit was brought or just before. The facts of such subscription by Ware and of their ignorance of it were proved beyond controversy at the trial, as also that he was plaintiff's agent in and about the making of this bond, that it was handed to him by Saxon, that he then carried it to his attorneys who advised him it was a good bond, that he then said he was entirely satisfied with it, and thereupon subscribed his name to it as a witness and kept it and carried it off with him for the obligee; and it

[White Sewing Machine Co. v. Saxon *et al.*]

remains to be considered whether this act of Ware was a material and vitiating alteration of the instrument. Of course on the facts just adverted to it is to be taken as the act of the obligee corporation, or as having been procured to be done by it, and as having been done after the complete execution of the bond.

There has been no adjudication of this question by this court. The authorities are conflicting upon it. In the American & English Encyclopædia of Law is this text: "It is a material alteration of an unattested instrument to insert, subsequent to its execution, the signature of an attesting witness. Such attestation furnishes a distinct and different medium of proof of the execution of the instrument, and, in some States, excepts it from the operation of the statute of limitations." 2 Vol., p. 245. And upon the general principle that any alteration is material which changes the effect and operation of the contract on the face of the paper, either by modifying original stipulations or by adding new ones express or implied, it would seem clear that the addition of an attestation, which imports the agreement of the parties upon and selection by them of a person to be the repository of the proof of execution and of the surrounding circumstances, *Ellerson v. State,* 69 Ala. 1, and under our laws has the effect of requiring the attesting witness to be called to prove execution, and of authorizing execution to be proved if he be dead or beyond seas by proving his signature, materially affects the status and rights of parties under the contract; and, as has been often said by this court, it is of no consequence whether the alteration if allowed to operate would be beneficial or detrimental to the party sought to be charged on the contract; the important question is not that, but whether the integrity and identity of the contract has been changed.—*Anderson v. Bellinger & Ralls,* 87 Ala. 334; *Montgomery v. Crossthwait,* 90 Ala. 553, 569-70, 571. The above quoted text of the Encyclopædia is supported by the courts of last resort of Maine, Massachusetts and Pennsylvania.—*Brockett v. Mountfort,* 11 Me. 115; *Homer v. Wallis,* 11 Mass. 309; *Marshall v. Gougler,* 10 S. & R. 164; *Adams v. Ferge,* 3 Met. 103; *Milberry v. Storer,* 75 Me. 69; *Henning v. Werk-*

*heiser,* 8 Pa. St. 518; *Foust v. Renno,* 8 Pa. St. 378, while in North Carolina and Wisconsin a different view obtains.—*Blackwell v. Lane,* 4 Dev. & B. 113; *Fuller v. Green,* 64 Wis. 159. We shall adopt the rule that an unauthorized attestation made under the circumstances shown in this case is a material and vitiating alteration. Whether to have this effect it would have to be fraudulently made we need not decide. The authorities so holding, also further hold that the attestation is *prima facie* fraudulent, and so far from the presumption being rebutted in the case at bar all the evidence bearing on the point goes to strengthen it; but it would seem under the decisions of this court that any material alteration made by one not a stranger to the contract would be vitiating whether made with fraudulent intent or not.

We find no error in the rulings of the court as to the sufficiency of the pleas setting up this alteration or as to the insufficiency of the replication to said pleas. The evidence was free from conflict to the proof of the averments of these pleas, and upon them the court properly gave the affirmative charge for the defendants Richardson and Miller.

Affirmed.