# Stone *v.* Goldberg & Lewis.

### *Assumpsit.*

(Decided November 12, 1912. Rehearing denied December 19, 1912. 60 South. 744.)

1. *Bills and Notes; Delivery; Condition.*—Under section 4973, Code 1907, a negotiable note may be shown to have been delivered by the maker to the payee in escrow, as between all others than bona fide holders.

2. *Same; Action; Defenses.*—As between all parties other than bona fide holders, a negotiable promissory note occupies the same position, in an action on it, as one not negotiable, and is subject to the same defense.

3. *Same; Assignee; Law Merchant.*—Where suit is brought on a note against the maker by the assignee thereof and the maker pleads any defenses valid against the original payee, the plaintiff desiring to invoke the aid of the law merchant must do so by special replication.

4. *Same; General Issue.*—Where the action is on a note, a plea in the form prescribed by section 5331, Code 1907, for the general issue in such form of action is sufficient as such.

[Stone v. Goldberg & Lewis.]

5. *Same; Complaint.*—A complaint on a promissory note brought in the form prescribed by form 1, section 5382, Code 1907, is sufficient.

6. *Same; Execution; Evidence.*—In the absence of a sworn plea, a note purporting to have been signed by the defendant and described in the declaration is admissible in evidence without proof of its execution under section 3967, Code 1907.

7. *Same; Consideration; Evidence.*—Where a note is declared on purporting to have been signed by defendant, it is prima facie evidence of sufficient consideration under section 3966, Code 1907, in the absence of a sworn plea impeaching its consideration.

8. *Same; Holder in Due Course; Negotiated.*—Construing sections 5507 and 4985, Code 1907, the payee of a note, cannot be its holder in due course within the protection of section 5013, as to defenses to negotiable instruments.

9. *Principal and Surety; Signing Induced by Fraud.*—Where one signs a note as surety under false representations made by the principal maker that the name of another person appearing thereon as one of the obligors, is the signature of such person, he is not liable, as between the parties, unless after discovering the fraud, he estops himself to set up the defense.

10. *Same; Condition Signing.*—Sureties signing a note on condition that others shall sign as sureties before its delivery, are not liable as between the parties, where it is delivered without such signature, unless they estop themselves.

11. *Same; Plea.*—Where the action was on the note, a plea setting up that it was signed by R. as the principal maker, and that the defendant signed it as surety, but with the express agreement between him and the principal debtor that, before delivering the note, the debtor would procure the signatures of certain others as sureties which was not done, is a plea that defendant signed on condition that before delivery, the note should be signed by such others as sureties.

12. *Dismissal and Non-Suit; Dismissal as to One Defendant.*—Where one of two persons sued on a joint note sets up the fact that he had been adjudged a bankrupt, and that the Federal Court acquired jurisdiction to settle his estate, the defense was personal and authorized the dismissal as to him without working a discontinuance as to the others.

13. *Pleading; Repetition.*—Where the general issue was pleaded in the form prescribed by the Code, another plea which is but such an issue in another form may be stricken without error.

APPEAL from Shelby County Court.

Heard before Hon. E. S. LYMAN.

Action by Goldberg & Lewis against J. D. Masters and J. H. Stone. Judgment for plaintiffs against defendant Stone, and he appeals. Reversed and remanded.

Plea 9 is as follows: "That the notes sued on were executed by one P. L. Ray, payable to Goldberg & Lewis, or order, and that the defendant signed said notes as surety, and defendant, relying upon that representation, and believing that said signatures on said notes were the bona fide signatures of said J. D. Masters, signed the same as surety as aforesaid; but defendant avers that said J. D. Masters had not and did not sign said notes, nor did any one with authority from the said J. D. Masters in that respect sign his said name to said notes; and defendant avers that the plaintiffs are the payees of the note executed by him as such surety, and which are made the basis of this suit."

Plea 13 is as follows: "Defendant says that the notes sued on were executed by one P. L. Ray as principal debtor thereon, and that defendant signed the same as surety thereon for P. L. Ray, but with the express agreement between the defendant and the said Ray that before delivering the note he would procure the signature of one G. M. D. Ray, Horace Morrell, and S. M. Cost as sureties on said note with the said P. L. Ray, and co-sureties thereon with this defendant; but defendant avers that said P. L. Ray did not secure the signatures of said Ray, Morrell, and Cost, or any of them, as sureties on said note, but that he delivered the same without said signatures, and without having procured the said Ray, Morrell, and Cost to sign the same as sureties aforesaid; and defendant avers that he did not know the names of the said Ray, Morrell, and Cost had not been signed to said notes as sureties thereon until after the plaintiffs had acquired the same as set out in the complaint."

RIDDLE, ELLIS, RIDDLE & PRUIT, for appellant. As to all others except bona fide holders, every contract on a

negotiable instrument is incomplete and revocable, until a delivery of the instrument for the purpose of giving effect thereto.—Sec. 4973, Code 1907; *Bank of Cartersville v. Gunter,* 58 South. 757. As between all others than bona fide holders, a negotiable note occupies the same position in a suit for its collection as a non-negotiable instrument, and is subject to the same defense.—Authorities supra. The payee of a negotiable note is charged with the notice of the condition upon which the surety signed the same.—*White Sewing M. Co. v. Saxon,* 121 Ala. 399; *Smith v. Kirkland,* 81 Ala. 345; *Wright v. Lang,* 66 Ala. 389. Under the facts in this case there was a conditional delivery.—*White S. M. Co. v. Saxon, supra;* 76 Pa. 88.

BROWN, LEEPER & KOENIG, for appellee. Master's plea was personal, and authorized a dismissal as to him without working a discontinuance.—*Kendall v. Lasseter,* 68 Ala. 181; *Reynolds v. Simpkins,* 67 Ala. 378. It is immaterial whether the other defendant objected or not to the filing of this plea. The complaint shows the note to be commercial paper, and hence, the fraud or condition set up cannot prevail against the plaintiff unless notice is shown to the plaintiff.—*Marks v. First Nat. Bank,* 79 Ala. 550; *First Nat. v. Dawson,* 78 Ala. 70; *Smith, et al. v. Kirkland, et al.,* 81 Ala. 345; *Farley Nat. Bank v. Henderson,* 118 Ala. 441; *Merchants Nat. v. Norris,* 163 Ala. 481; *Gill v. Thomas,* 25 Am. Rep. 710. The complaint was sufficient as it was in the Code form.

PER CURIAM.—1. Under the provisions of section 4973 of the Code of 1907, the delivery of a negotiable instrument, as between the parties and all others not bona fide holders, may be shown to have been made

by the maker to its payee in escrow.—*Bank of Carters-ville v. Gunter,* 4 Ala. App. 539, 58 South. 757.

As between the parties and all others not bona fide holders a negotiable promissory note occupies the same position, in a suit for its collection, as a promissory note which is not negotiable, and is subject to the same identical defenses. In fact, when the assignee of a negotiable promissory note brings a suit against its maker upon the note for its collection, and the maker pleads want of consideration, breach of warranty, fraud between the original parties, or any other defense which is valid as between the maker and the payee of the note, then, if the plaintiff desires to invoke for his protection the law merchant, he must do so by special replication.—*Slaughter's Case,* 109 Ala. 157, 19 South. 430; *Craft v. Russell,* 67 Ala. 9; *Hodges v. Winston,* 94 Ala. 576, 10 South. 535.

2. The present suit is by the payee of three promissory notes against their makers. The notes, indeed, are, in form, commercial instruments, but as the suit is between the parties to the instruments, and as the appellant is not the principal, but a mere surety on the notes, the legal principles governing this case are not so much those which pertain to the law merchant as those which govern the subject of principal and surety. The following propositions seem to be established beyond cavil by the decisions of our Supreme Court:

(A) A surety signing a note upon the representation by the principal maker of the note that the name of another whose name appears on said note as one of its obligors is the signature of such other obligor, when, in fact, such signature was forged to such note, and such surety, by reason of such forged signature, is induced to sign such note, is not, as between the parties to the note, liable thereon, unless, after a discovery of

the forgery, he does something to estop himself from setting up the defense.—*White Sewing Machine Co. v. Saxon,* 121 Ala. 399, 25 South. 784; *Sharp v. Allgood,* 100 Ala. 183, 14 South. 16.

(B)  Sureties signing a note on condition that others shall sign it as sureties before delivery by the principal obligor are not bound by the note as between the original parties to the note, if the principal obligor delivers it without obtaining the signatures of such sureties, unless such sureties do something to estop themselves from interposing such defense.—*White Sewing Machine Co. v. Saxon, supra; Guild v. Thomas,* 54 Ala. 414, 25 Am. Rep. 703.

The surety is under no obligation to sign the note, and as that is true, he may, to use the language of Mc-Clellan, C. J., "put such limitations and conditions upon his favor as seem to him proper or to his interest."— *White Sewing Machine Co. v. Saxon, supra.*

3.  This suit, as above stated, was brought by the payee of three promissory notes against two of their makers.  One of the defendants, J. D. Masters, filed an unverified plea setting up the fact that he had filed a petition in a District Court of the United States praying that he be adjudicated a bankrupt, and that, by said court, he had been so adjudicated, and that "pending the final hearing on his discharge in said cause this court is without jurisdiction to hear and determine the same, and that the cause should be abated and all proceedings herein stayed."  Thereupon, as the minute entry recites, the plaintiffs confessed the plea of the defendant J. D. Masters that he had been declared a bankrupt, and "dismiss their suit as to him and by leave of the court amend their complaint by striking out the name of the said J. D. Masters."  Thereupon the other defendant, J. H. Stone—appellant here—moved the

[Stone v. Goldberg & Lewis.]

court to dismiss the suit as to him, upon the ground that the dismissal of the suit as to Masters operated as a discontinuance of the entire cause of action. While the plea setting up the bankruptcy proceedings concludes with the allegation that "this cause should be abated and all proceedings herein be stayed," it was not for the defendant, who filed that plea, to determine for the court what course should be taken by the court in dealing with the matters set up by the plea, nor the course which the plaintiffs in the case should adopt in meeting the situation presented by the plea.

It is undoubtedly the general rule that a dismissal or discontinuance as to one co-defendant in an action ex contractu effects a discontinuance as to the entire action. This rule is not one of universal application, however; for if there is a sufficient legal excuse for the discharge of the dismissed defendant, as where the defendant advances a personal defense such as coverture, infancy, bankruptcy, or the like, then there is no discontinuance. —6 Ency. P. & Pr. pp. 857, 858, 859. Where one of the defendants in such a suit advances by a plea such a personal defense to the action, the plaintiff may admit the truth of the defense, and dismiss as to that defendant, and proceed against the other defendants.—*Reynolds v. Simpkins,* 67 Ala. 378.

The plea of J. D. Masters, above referred to, was a plea of bankruptcy, and was, within the meaning of the above rule, a plea setting up by Masters a personal defense to the action. While the trial court had the right to order a stay of the proceedings against the bankrupt until the question as to whether the federal court would grant to the bankrupt his discharge had been determined, we know of no rule of law which precludes a plaintiff, upon the filing of such a plea, from accepting that plea as a defense to such action in the state court,

and from submitting all of his rights against such defendant to the federal court, which, by virtue of the decree adjudicating the defendant a bankrupt, has acquired jurisdiction to administer the estate of such bankrupt. "When a plea is filed setting up infancy, bankruptcy, coverture, or other like personal defense, there can be no question of the proposition that the plaintiff can admit the truth of the plea, and, on application to the court, discontinue as to the defendant who interposes such defense, without prejudice to the status of his action against the other co-defendants.—*Cuyler v. Coats,* 10 How. Prac. (N. Y.) 141; 1 Chitty Pl. 578." *Reynolds et al. v. Simpkins,* 67 Ala. 378. The only facts set up by Masters in his plea are that he had been adjudicated a bankrupt, and that the federal court sitting in bankruptcy had acquired jurisdiction to settle his estate. The plaintiffs had the right to confess those facts, dismiss as to Masters, and proceed as to the other defendant. There was no discontinuance of this suit by the plaintiffs.—*Reynolds et al. v. Simpkins, supra.*

4. Plea 9 (which the reporter will set out in the report of this case), for reasons stated by us in paragraph A of subdivision 2 of this opinion, was not subject to the plaintiff's demurrer, and the trial court committed reversible error in sustaining the demurrer to it. Pleas 3 and 4 are, in substance, the same as plea 9, and require the same evidence to support them. Pleas 5; 6, 7, and 8 and 11 set up the same defense that is set up in pleas 3, 4, and 9, coupled with other facts which, by setting them out in said pleas, the defendant has assumed the burden of proving if he undertakes to sustain said pleas.

5. In the case of *McClure et al. v. Colcough et al.,* 5 Ala. 65, the Supreme Court held that it is no defense to a bond that it was signed by some of the obligors

"under the expectation, with the full understanding, and under assurances from the public officer, authorized to take it, that another person should also execute it as a surety," when it is not shown that this was made the condition of its delivery. While plea 13, which the reporter will set out, does not in ipsissimis verbis say that the notes were signed by the defendant Stone as surety on condition that before their delivery they were to be signed also by G. M. D. Ray, Horace Morrell and S. M. Cost as sureties, we think that, in legal effect, the plea so alleges, and that to sustain said plea the defendant will be under the necessity of producing the same proof as if in ipsissimis verbis the above words were in fact set out in the plea. We are, therefore, of the opinion that under the rule declared in paragraph B of subdivision 2 of this opinion plea 13 was not subject to the appellant's demurrer, and that the trial court committed reversible error in sustaining the demurrer which was taken to it.

We deem it useless to discuss the other pleas which set up, or attempt to set up, in various ways, the defense which the appellee in plea 13 alleges he possesses to this action. We presume that the views above expressed will be a sufficient guide to the court below on any question that may arise on the pleadings when this case is again tried.

6.　Plea 1 is in the form prescribed by the Code for the general issue in this form of action, and was sufficient as such. Code 1907, § 5331.

The court might well have struck, upon motion of appellants, plea 2, which is but the general issue in another form.

7.　The complaint in this case was in the form prescribed by the Code and was sufficient.—Code 1907, § 5382, form 1.

17 CA

8.   As there was no sworn plea denying the execution by the appellee of the notes sued on, the notes were admissible in evidence without proof of their execution.— Code 1907, § 3967.

There was no sworn plea impeaching the consideration of the notes, and the notes were themselves, therefore, prima facie evidence of the fact that they were made upon sufficient consideration.—Code 1907, § 3966.

9.   We have above discussed all the questions presented by this record, and have indicated wherein in our opinion the trial court committed reversible error upon the trial.   For the errors pointed out, the judgment of the court below is reversed, and this cause is remanded to the court below for further proceedings in accordance with this opinion.

Reversed and remanded.

NOTE.—The foregoing opinion was prepared by Judge DE GRAFFENRIED, while he was a judge of this court, and is adopted by the court.

## On Rehearing.

THOMAS, J.—Section 5013 of the Code provides: "In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defense as if it were non-negotiable."   Counsel for appellees, Golberg & Lewis, insist on rehearing that the appellees are "holders in due course" of the instrument sued on, which is a negotiable paper, and that it is not open in their hands to the defenses set up in the pleas. This presents for consideration the sole question : Can the payee of a negotiable instrument be a "holder in due course" as against the makers?   We think not.   Section 5007 of the Code defines a holder in due course as follows : "A holder in due course is a holder who has

taken the instrument under the following conditions:
(1) That the instrument is complete and regular upon
its face. (2) That he became the holder of it before
it was overdue, and without notice that it was previously
dishonored, if such was the fact. (3) That he took it
in good faith and for value. (4) That at the time it
was negotiated to him he had no notice of any infirmity
in the instrument or defect *in the title of the person
negotiating it.*" All these things must concur, under
the plain provisions of the statute, to constitute the
holder of a negotiable instrument a "holder in due
course," and each is as essential as the other to that end.
Sub-division 4, quoted above, contemplates that the in-
strument must be "negotiated" to the holder in order
for the holder to be a "holder in due course." If there
is any doubt from the sub-division itself as to the mean-
ing of the word "negotiated" as therein used, it is clear-
ly removed by another section of the same chapter of
the Code, § 4985, which defines when an instrument is
"negotiated" as follows: "An instrument is negotiated
when it is *transferred from one person to another in
such manner as to constitute the transferee* the holder
thereof; if payable to bearer it is negotiated by deliv-
ery; if payable to order, it is negotiated by the indorse-
ment of the holder, completed by delivery."—*Walker
v. Ocean Bank,* 19 Ind. 247; *Whitworth v. Adams,* 26
Va. 333; *Blakiston v. Dudley,* 5 Duer (12 N. Y. Super.
Ct.) 373; *Odell v. Clyde,* 18 App. Div. 333, 57 N. Y.
Supp. 126; *Shaw v. Merchants' Nat. Bank,* 101 U. S.
557, 25 L. Ed. 892.

From this it therefore clearly appears that the payee
of a negotiable instrument, though the holder of it, is
yet not the "holder of it in due course"; for in order for
the holder to be a "holder in due course" under the
present statutes he must have acquired the paper, not as

payee, but as the result of a transfer from some prior holder—either the payee or bearer, if payable to bearer, or some prior transferee or indorsee. The maker of a note cannot in the nature of things "transfer" it or "negotiate" it to the payee named in it; for these terms can only be applicable to something which has an existence, and until the paper, in form a note, is delivered to the payee named in it, it has no legal efficacy or existence whatever as such. Until then it is no more than a blank piece of paper. Legal vitality can be given to it only by delivering it to the payee named in it, or, if it is payable to bearer, only by delivering it to some other person than the maker. By such delivery it rises to the dignity of a contract—ceases to be nothing and becomes something—becomes a promise on the part of the maker or makers to pay the stipulated sum to the payee named in it, or, if payable to bearer, to the person to whom it is delivered. After such delivery it becomes property, but not before. After it becomes property, it becomes the subject of transfer, but not before. The act on the part of the maker—the delivery—which makes it property makes the person to whom it is delivered, the payee, the owner of it, not as transferee, but as one of the original parties to the contract. Such payee can himself then "negotiate" it, or "transfer" it to other persons just as he can other property he owns; but the maker can never in the nature of things "transfer" or "negotiate" a note he himself makes. When the payee, or bearer, if payable to bearer, "negotiates" the instrument, if a negotiable one, by transferring it to a bona fide purchaser, that purchaser would be protected by our statute against such defenses of the makers as in this case are set up; for a purchaser can be a "holder in due course," as defined by our statute, if he brings himself within its terms, but the payee cannot be. This

construction of our statute makes it in consonance with the rule of the law merchant as laid down in Daniel on Negotiable Instruments, par. 769, to-wit: "It is a general principle of the law merchant that, as between the immediate parties to a negotiable instrument—parties between whom there is a privity—the consideration may be inquired into; *and as to them the only superiority of a bill or note over other unsealed evidence of debt is that it prima facie imports a consideration.*" Counsel of appellees in support of their contention that appellees, though they are the payees, can be and are "holders in due course" of the instrument sued upon, urge upon us as authority, not only many cases outside of this jurisdiction, but the decisions of our own Supreme Court in the cases of *First National Bank v. Dawson,* 78 Ala. 67, and *Marks v. First Nat. Bank,* 79 Ala. 550, 58 Am. Rep. 620. In the two cases last mentioned the liability to the payee of indorsers, and not sureties on the note, was the question under consideration. Whether under those decisions the same rule of liability should be applied to sureties as was there applied to indorsers we need not determine; for the reason that our statutory "Uniform Negotiable Instrument Law"—those sections of it hereinbefore quoted—has superseded the authority of those cases, if they were ever authority, on the proposition herein considered.

In the case of *Rawleigh Medical Co. v. Wilson et al.,* 7 Ala. App., 60 South. 1001, we collated the authorities on the defenses set up in the pleas in this case.

The application for rehearing is overruled .