# Goldberg & Lewis *v.* Stone.

### *Assumpsit.*

(Decided April 23, 1914. Rehearing denied May 14, 1914. 65 South. 454.)

1. *Bills and Notes; Defenses; Holder in Due Course.*—Under the negotiable instrument law (Sections 4958, et seq., Code 1907) a payee named in a negotiable note cannot become a holder in due course as against a party thereto as maker or surety.

2. *Statutes; Construction; Re-enactment.*—Where a statute has received a judicial construction and is subsequently re-enacted or adopted, the known and settled construction given to it by the court is regarded as a part of the statute.

APPEAL from Shelby County Court.

Heard before Hon. E. S. LYMAN.

Assumpsit by Goldberg & Lewis against J. H. Stone. Judgment for defendant and plaintiff appeals. Affirmed.

[Goldberg & Lewis v. Stone.]

BROWNE, LEEPER & KOENIG, for appellant. The question presented is whether or not the payee of a negotiable instrument can be a holder in due course as against the surety. Under the common law a payee of a negotiable instrument could be a holder in due course.— *Watson v. Russell,* 3 B. & S. 34, approved in the following American cases.—133 U. S. 453; 183 Mass. 144; *Monroe v. Bordier,* 8 C. B. 862, approved in 49 Ark. 465, and the two American cases above cited; *Masters v. Ibberson,* 8 C. B. 102; see, also, 63 Me. 139; 16 N. E. 196; 17 N. W. 641; 13 N. E. 596; 92 N. E. 1029. The condition attempted to be interposed by the plea will not prevent the makers from being liable to the obligee if he received the instrument in good faith for a sufficient consideration without knowledge or notice of the condition.—*Findley v. State Bank,* 6 Ala. 244; *First Nat. Bank v. Dawson,* 78 Ala. 67; 31 Vt. 318; 76 Am. Dec. 128; 21 Mo. 436; 69 Ia. 344; 114 Mo. 203; 124 N. C. 171; 47 N. H. 81; 93 Tenn. 645; 61 Minn. 274; 44 Am. Rep. 187; 125 Mass. 496; *Smith, et al. v. Kirkland,* 81 Ala. 345; *Marks v. First Nat. Bank,* 79 Ala. 350; *Sharp v. Allgood,* 100 Ala. 183. Our statutory uniform negotiable instrument law has not superseded the common law in this regard, and if it had by the express terms of our statutory system, the payee may be a holder in due course.—Sec. 5138, 5007, 4985, 4971, 4973, 5013, 5043; *Lewis v. Clay,* 67 L. J. Q. B. Div. 224; *Hurdman v. Wheeler,* 1 K. B. 361; *Foster v. McKinin,* 4 C. P. 704; *Lloyd's Bank v. Cook,* 1 K. B. 794; 66 N. E. 646; 74 N. E. 592; 49 Ark. 465; 32 Cyc. 392.

RIDDLE & ELLIS, for appellee. A negotiable instrument in the hands of any other than a holder in due course is subject to the same defenses as if it were not negotiable.—Code of Ala. 1907, section 5013. In order

for the holder of an instrument to be holder in due course, said instrument *must have been negotiated to him.*—Code of Ala. 1907, section 5007; sub-division 4. An instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee a holder thereof; if payable to bearer it is negotiated by delivery; if payable to order, it is negotiated by the indorsement of the holder, completed by delivery.—Code of Ala. 1907, section 4985; *Stone v. Goldberg & Lewis,* 6 Ala. Ct. Ap. Rep. 249, and cases cited therein. The payee of a negotiable instrument cannot be a *holder* in *due course as against the maker.*—*Stone v. Goldberg & Lewis, supra.* If a surety signs a note upon the representation of the principal maker of the note that the name of another whose name appears on said note as one of its obligors is the signature of such other obligor, when in fact such signature was forged to such note, and the surety by reason of the forged signature is induced to sign the note, he is, as between the parties to the note, not liable thereon.—*White Sewing Machine Co. v. Saxon,* 121 Ala. 399; *Sharp v. Allgood,* 100 Ala. 183. A surety signing a note on condition that others shall sign it before delivery by the principal obligor is not bound on the note as between the original parties to the note, if the principal obligor delivers it without obtaining the signature of such other sureties.—*White Sewing Machine Co. v. Saxon, supra; Guild v. Thomas,* 54 Ala. 414. The payee of a negotiable promissory note is charged with notice of the condition upon which the surety signs the same. —Code of Ala. 1907, section 4973; *White Sewing Machine Co. v. Saxon, supra.* The indorser of commercial paper (even indorsers *Sans Recours*) warrants, among other things, that the signature of all prior parties are genuine, except the drawer's signature, which the payee

or acceptor is presumed to know.—Code of 1907, section 5017-5024; 7th Cyc. page 831 (11).

PELHAM, J.—This case, involving no other propositions than heretofore presented, was before this court on a former appeal and is to be found reported in the sixth volume of the Alabama Appellate Court reports at page 249, 60 South. 744; the appellants here being the appellees on that appeal. There are many assignments of error made upon the record, but they practically raise but one question, and the assignments relating to this question were discussed together by appellants' counsel on oral argument, and are treated in the same manner in extensive and well-prepared briefs in support of the appellants' contention.

The proposition or construction so earnestly presented and persistently contended for by appellants' counsel is that, under the provisions of our Negotiable Instruments Law (Acts 1907, p. 660 et seq.; Code, § 4958 et seq.), the appellants as the named payees of a negotiable instrument can be "a holder in due course" as against the appellee, one of the parties to it as maker or surety.

We considered this proposition at length on the former appeal (see opinion on application for rehearing), and the only argument that is now offered in support of the appellants' contention that was not before advanced and considered by us is based on the recognized canon of construction acquiesced in by all of the courts, that, when a statute is subsequently adopted or re-enacted after it has received judicial construction, the known and settled construction that has been given to it by the courts is considered as becoming a part of it—"silently incorporated"—and that the subsequent adoption includes the adoption of the construction that has been

given and affixed to the statute. It is urged in this connection that our negotiable instruments law of 1907 is substantially taken from, and is a re-enactment in substance and effect, by the lawmaking powers of our state, of the English statute known as the bills of exchange act of 1882. If this is the case, and a comparison of the statutes shows that it is, then the rule of construction contended for would apply.—*I. C. C. v. Del. L. & W. R. R. Co.*, 220 U. S. 235, 31 Sup. Ct. 392, 55 L. Ed. 448; *McDonald v. Hovey*, 110 U. S. 619, 4 Sup. Ct. 142, 28 L. Ed. 269.

Those parts or sections of our negotiable instruments law involved in the question presented here on the rulings of the trial court appear to be adopted from sections of the English bills of exchange act that are identical with our law. In fact, our statute only substantially differs from the English statute in that, not having stamp laws, as England has, our statute does not include and make provision for matters having reference to those laws. Our statute apparently being an adoption in substance of the English law, it then becomes necessary to examine the English cases construing these sections of the bills of exchange act prior to their adoption or enactment into our laws, to ascertain if they had received and affixed to them a known, settled judicial construction by the courts when adopted and enacted into law in this state.

In passing from a reference to a comparison of the two statutes (our own and that of England) as showing them to be substantially the same it may be well, to prevent confusion in considering the English cases and in discussing the question in connection with the two statutes, to call attention to the fact that the method of numbering the sections of the two statutes is by no means the same, and that section 191 of the Negotiable

Instruments Law (Acts 1907, p. 692; Code, § 5138), defining the meaning of terms used, appears as section 2 in the English bills of exchange act; the section stating what constitutes a "holder in due course" is numbered 52 in the Negotiable Instruments Law (Code, § 5007), but appears as section 29 in the bills of exchange act; while the provision of our statute as to when an instrument can be said to be negotiated is numbered as section 30 (Code, § 4985) and is designated as section 31 in the English statute. The sections of our statute as to delivery and filing up blanks are somewhat different from the English statute, due principally to the stamp law of that country, which is taken into consideration, and these provisions framed with due regard to it. The first clause of section 16 of the Negotiable Instruments Law (Code, § 4973) is the equivalent of section 84 of the bills of exchange act, providing that a note is inchoate and incomplete till delivery to the payee or bearer.

The first English case in point to which our attention is directed as the earliest decision of the courts of that country bearing directly on the proposition is that of *Lewis v. Clay,* L. J. [1898] 67 Q. B. DD. 224, in which the Lord Chief Justice in rendering the judgment of the court flatly and pointedly construes sections of the English bills of exchange act of 1882 that are identical with those of our Negotiable Instruments Law of 1907, under consideration in this case, adversely to the contention of appellants. Quoting from the opinion of the Lord Chief Justice in this case:

"It will be apparent from a consideration of the facts of the case that the plaintiff was not a 'holder in due course' at all, but he was, in fact, simply *the named payee* of two promissory notes. Further an examination of sections 20, 21, 29, 30, and 38 [bills of exchange act],

relating expressly to bills, and sections 83, 84, 88, and 89, relating to promissory notes, will make it quite clear that a 'holder in due course' is a person to whom, after its completion by and as between the immediate parties, the bill or note has been negotiated. In the present case the plaintiff is *named as payee on the face of the promissory note, and therefore is one of the immediate parties.* The promissory notes have, in fact, *never been negotiated* within the meaning of the act." (Italics supplied.)

The next of the English cases considering this question is that of *Herdman v. Wheeler* [1902] L. R. 1 K. B. 361, in which the issue before the court for determination turned on a construction of what constituted the "negotiation" of a stamped paper which was signed in blank with an authorization to fill it in for one amount, and which was in breach of authority fraudulently filled in for a larger amount; and the named payee, having in good faith paid full value without notice of the breach of authority, brought suit on the note. The court held that the delivery of the note under such circumstances to the named payee was not a negotiation of the note within the meaning of applicable provisions of the bills of exchange act so as to entitle the plaintiff as payee to recover; in other words, a holding that the delivery to the plaintiff as payee did not constitute a negotiation of the note and left it subject to the same defenses as if it were nonnegotiable.

In this last-cited case (*Herdman v. Wheeler, supra*), the holding in *Lewis v. Clay, supra,* that the payee of a note cannot under any circumstances be a holder of it in due course is criticised as dictum and questioned. It is said, however, by the justice (Channell) in rendering the opinion of the court:

"On the whole, therefore, we are not prepared to hold that a payee of a note can never be a holder in due course; but it is, as it seems to us, just as unnecessary for us to decide that question as it was for the late Lord Chief Justice to do so in the case before him [referring to *Lewis v. Clay*]. The real point in the present case, after all, is: Can we hold that this note was 'negotiated' to the plaintiff within the meaning with which the words are used in the proviso to the twentieth section? And as to this, we certainly have the opinion of the late Lord Chief Justice [referring to the case of *Lewis v. Clay*] that a delivery to a payee for value is not a 'negotiation' within the meaning of the act. * * * We have been very reluctant to come to the conclusion that the judgment in favor of the defendant in this case was right, because it appears dangerous even to cast any doubt upon a payee's right to recover when he has taken a bill or note complete and regular on the face of it honestly and for value; but, after carefully considering the matter, we have come to the conclusion that we should be unfairly straining the words if we did not hold that 'negotiated' in the proviso at the end of the twentieth section [bills of exchange act] meant transferred by one holder to another."

The learned justice concludes by saying, in effect, that, although possibly the case might have been decided favorably to the plaintiff payee under the law merchant before the passage of the bills of exchange act, it could not be consistently so decided with the meaning given to "issue" and "negotiate" by the act itself, considered in connection with the proviso at the end of section 20 of the act, having reference to the negotiation of a note to a holder in due course after completion.

Following the case we have just above discussed and quoted from, came the case of *Lloyd's Bank v. Cook* [1907] L. R. 1 K. B. 794, in which an attempt was made to distinguish that case from the case of *Herdman v. Wheeler;* the issue before the court being disposed of on the doctrine of common-law estoppel entirely apart from the provisions of the bills of exchange act. The right of action in this suit was founded on a transaction wherein a person signed a blank stamped piece of paper, and handed it to a third person whom he authorized to fill it up as a negotiable instrument in a certain amount, but who fraudulently filled it in for a greater amount (not in excess of the amount covered by the stamp) payable to plaintiff, and it was held that the person who put his name on a blank stamped paper to be used as a negotiable instrument incurred such a responsibility to any one who in good faith made advance in value on the faith of his signature on the stamped paper that without reference to, and entirely aside from, the bills of exchange act, he would be estopped under the common-law doctrine of estoppel from denying his liability on the instrument. The Master of the Rolls in delivering the opinion in this case (*Lloyd's Bank v. Cook*) says:

"I do not think it is necessary for us in the present case to treat the rights of the parties as having to be ascertained by reference to the provisions of the bills of exchange act, 1882, which were considered in *Herdman v. Wheeler* [1902] 1 K. B. 361, because, in my opinion, the common-law doctrine of estoppel applies, and the rights of the parties may be decided by reference to that doctrine, without giving any opinion as to the correctness of that decision."

Saying further that although the circumstances of the two cases are very similar, as the conclusion reach-

ed is by the application of an entirely different principle of law not called to the attention of the court in *Herdman v. Wheeler*, it will not be impugning anything said by the learned judge in that case upon the true construction of the bills of exchange act. There are two separate concurring opinions delivered by sitting justices in this case, one by Lord Justice Cozens-Hardy, in which he concurs in the opinion rendered by the Master of the Rolls and expresses the desire to keep an open mind as to the decision of *Herdman v. Wheeler,* but says that it is entirely unnecessary to consider that case, as the case at bar is disposed of on an entirely different proposition of law, i. e., the doctrine of estoppel. Another concurring opinion is appended by Lord Justice Fletcher Moulton, in which the justice states that he is of the same opinion and agrees with the reasons given by the Master of the Rolls, but desires to add "a few observations with reference to the argument" of counsel based on the bills of exchange act. The learned Lord Justice then proceeds to give his "observations" to the effect, among other things, that he takes the definition of "negotiation" as given by the bills of exchange act (section 31, subd. 1) as being merely equivalent to indorsed, and that a payee as well as an indorsee may, under the provisions of the act, be a "holder in due course." These observations of the Lord Justice are but an expression of his individual views, and can only be taken as obiter dictum, for the opinion of the Master of the Rolls, in which the other two Lord Justices concurred, pointedly and specifically and in plain language placed the conclusion reached in disposing of the case before the court on the application of a different principle of law and without any consideration given to the proper construction to be given to any provision of the bills of exchange act relating to what

did or what did not constitute a "holder in due course," as used or provided in that act.

We have carefully considered and above discussed the only English cases relied upon, and we do not find any other bearing upon the question under consideration. These English cases had not been brought to our attention, and we had not examined them, when this case was before us on the former appeal; but we think a careful analysis of them will show that their tendency on a whole is to support the conclusions reached in the opinions rendered on the first appeal of this case. Most certainly they do not show a known and settled construction given by the English courts to the same or similar provisions of the bills of exchange act opposed to the construction we have given to these provisions as subsequently adopted in our statutes as a part of the Negotiable Instruments Law.

We do not deem it necessary to again argue the reasons that led us to the conclusion that, under the circumstances shown in this case, the appellants being the named payees of the note sued on, they could not under the provisions of the Negotiable Instruments Law be a "holder in due course," for we have given full expression to our views and reasons therefor on this subject in the opinion rendered on the aplication for rehearing on the former appeal.—*Stone v. Goldberg & Lewis,* 6 Ala. App. 249, 258, 60 South. 744.

It is suggested that, because of the custom of banking institutions in making loans, it is of the utmost importance that the opinion rendered on the former appeal should not remain the announced, and become the settled, rule of law on this subject. But after a most thorough examination and careful consideration of the question on this appeal we think the former holding sound, and that, as applicable to the circumstances

shown, we have placed upon the statute the only true and proper legal construction the language used affords without unfairly straining the meaning of the words employed, or writing into it by judicial construction that which it does not, fairly and reasonably construed, contain.

We have carefully considered all of the authorities cited by appellants' counsel in brief, and they do not lead us to a different conclusion from that we have announced; nor do we think a discussion of these cases at all necessary.

The rulings of the trial court upon which the various assignments of error are predicated conform to our holding as expressed, and the judgment of that court appealed from will be affirmed.

Affirmed.

