# *Ex Parte* Goldberg & Lewis.

## *Assumpsit.*

(Decided December 17, 1914. 67 South. 839.)

1. *Bills and Notes; Conditional Signature; Payee as Holder in Due Course.*—Under sections 4985, 5007, 5013, 5138 and 5143, Code 1907, a payee of a negotiable note taking the note for value in good faith in the regular course of business without notice may recover thereon as against a surety signing in reliance on false statement of the maker of the note that the signature of another ostensible surety is genuine, and on the violated condition that other named parties are to sign as co-sureties before delivery of the note to the payee; the definition of a holder in due course being construed as applicable to a holder provided he is a negotiatee, but not excluding all who are not holders by negotiation, although the word, negotiate, means only the transfer from one holder to another after the instrument has been issued.

2. *Same; Delivery; Immediate Parties.*—The provisions of section 4973, Code 1907, refer only to a conditional or special delivery to the payee of which he is advised at the time, and not to a delivery to an agent for transmission to the payee.

CERTIORARI to Court of Appeals.

Petition for certiorari by Goldberg & Lewis to review and revise the judgment of the Court of Appeals in the case of *Stone v. Goldberg & Lewis,* 10 Ala. App. 485, 65 South. 454. Writ granted and judgment of the Court of Appeals reversed and remanded.

BROWN, LEEPER & KOENIG, and KNOX, ACKER, DIXON & SIMS, for appellant.

RIDDLE, ELLIS & RIDDLE, for appellee.

SOMERVILLE, J.—(1) The only question presented by the record is whether the payee of a negotiable note can recover thereon against a surety, who signed the note in reliance upon the false statement of the principal signer that the signature of another ostensible surety upon the note was genuine, and upon the violated condition that other named persons were to sign the note as co-sureties before its delivery to the payee; the payee having taken the note for value in good faith in the regular course of business, without notice of the fraud or breach of agreement.

In its original opinion the Court of Appeals held that, on common-law principles, either of the matters stated was available to the defendant to defeat a recovery. On the application for rehearing, however, it was held, without receding from the former opinion, that these defenses were available to this defendant under the provisions of the Negotiable Instruments Act (Code, §§ 4958-5149), regardless of the previous state of the law as shown by our decisions (*Stone v. Goldberg & Lewis,* 6 Ala. App. 249, 60 South. 744).

In the leading English case of *Watson v. Russell,* 3 B. & S. (Q. B.), it was said by Lord Cockburn, C. J.: "I consider the law to be now quite settled that if a person puts his name to a paper, which either is, or by being filled up or indorsed may be converted into, a negotiable security, and allows such paper to get into the hands of another person, who transfers the same to a holder, for consideration and without notice, such party is liable to such bona fide holder, however fraudulent, or even felonious, as against him, the transfer of the security may have been."

The "transfer" in that case was simply the delivery of the note to the payee, and the principle of protection was applied to the payee as a bona fide holder for value.

This principle is equally well settled in the United States, and has been most frequently applied by the courts in the enforcement of the liability of a surety to the payee of commercial paper, whether his relation to the paper was prima facie that of surety co-maker, or irregular indorser before delivery. The American cases are collected in notes to *Benton, etc., Bank v. Boddicker,* 105 Iowa, 548, 75 N. W. 632, 45 L. R. A. 321, 67 A. St. Rep. 310; *Vander Ploeg v. Van Zuuk,* 135 Iowa, 350, 112 N. W. 807, 13 L. R. A. (N. S.) 490, 124 Am. St. Rep. 275; and in the opinions of the court in *Boston, etc., Co. v. Stener,* 183 Mass. 140, 66 N. E. 646, 97 Am. St. Rep. 426, and *Mechanics' Bank v. Chardavoyne,* 69 N. J. Law, 256, 55 Atl. 1080, 101 Am. St. Rep. 701. In his note to *Bedell v. Herring,* 77 Cal. 572, 20 Pac. 129, 11 Am. St. Rep. 307, 310, Mr. Freeman says: "It is not necessary, in order to entitle a holder to the protection of the rule, that he be a subsequent transferee from or through an original party to the instrument. The payee himself may be protected. Thus, if a person is induced to sign a note as surety by the fraudulent representations of the principal maker, he will, notwithstanding, be liable to the payee, if it does not appear that the payee knew of the fraud. (Citing the authorities.)"

To this effect the authorities are uniform, and the rule seems to be grounded equally upon the maxims of the common law and of the lex mercatoria.

This court is fully committed to the rule that protects an innocent payee for value against any defense by an accommodation indorser, based upon transactions between such indorser and his principal.

In *Marks v. First Nat. Bank,* 79 Ala. 550, 58 Am. Rep. 620, it was said, per SOMERVILLE, J.: "The main question in this case, reduced to its last analysis, is

simply whether, in the case of accommodation negotiable paper, the fraud of the maker, in procuring the signature of an accommodation indorser, is a good defense to a suit brought against such indorser by the payee, who knows the nature of the paper, but is ignorant of the fraud. We are of opinion, upon fundamental principles of law governing the subject of commercial paper, that the defense cannot be sustained."

In *First Nat. Bank v. Dawson,* 78 Ala. 67, the defendant had indorsed a note for the maker's accommodation, upon the violated condition that the maker "was not to negotiate or use it until he procured two other solvent co-sureties, or indorsers, to be jointly bound with him (Dawson) as common sureties for Fellows (the maker)." The plaintiff bank was the payee of the note. STONE, C. J., said: "It is not, and cannot be, controverted that if the bank acquired this commercial paper in due course of trade, for a valuable consideration, and without notice of the limitation put upon Fellows' use of it, this defense would be unavailing."

The case was tried and determined upon the issue of due notice to the bank of the limitation.

For the purpose of this case, and with respect to the application of the principle under consideration, it could make no possible difference whether the technical relation of the defendant to the principal debtor and to the paper was that of indorser and guarantor, or comaker and surety.

From these cases it clearly appears that this court regards a payee, under the conditions stated, as a bona fide purchaser in due course of trade, as to the ostensible obligations of all other parties who have lent their credit to the paper by signing it in any recognized mode before its delivery to the payee. And, further, that the protection of such a payee against such a plea by a

surety is based upon "fundamental principles of law, governing the subject of commercial paper."

From the foregoing it will be readily seen that the cases of *Guild v. Thomas,* 54 Ala. 414, 25 Am. Rep. 703, *White, etc., Co. v. Saxon,* 121 Ala. 399, 25 South. 784, and others, which relate to bond contracts, and *Sharp v. Allgood,* 100 Ala. 183, 14 South. 16, which relates to a non-negotiable note, usurious on its face, are not here in point.—*Smith v. Kirkland,* 81 Ala. 345, 1 South. 276.

The decisive inquiry is, therefore, whether the provisions of the Negotiable Instruments Act have expressly or impliedly abrogated the principle in question.

Looking to the opinions emanating from other jurisdictions where a code of commercial law uniform with our own has been adopted, we note a striking absence of harmony. The provisions of the Code which are supposedly pertinent are as follows: "Sec. 5138. Holder means the payee or indorsee of a bill or note, who is in possession of it, or the bearer thereof.

Sec. 5007. A holder in due course is a holder who has taken the instrument under the following conditions: (1) That the instrument is complete and regular upon its face. (2) That he became the holder of it before it was overdue and without notice that it had been previously dishonored, if such was the fact. (3) That he took it in good faith and for value. (4) That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it.

Sec. 4985. An instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof; if payable to bearer, it is negotiated by delivery; if pay-

able to order, it is negotiated by the indorsement of the holder, completed by delivery.

Sec. 5013. In the hands of any holder who is not a holder in due course a negotiable instrument is subject to the same defenses as if it were non-negotiable. * * *

In *Lewis v. Clay*, (1897) 67 L. J. (Q. B.) 223, 227, there is a dictum by Lord Russell, C. J., that under the English Bill of Exchange Act "a 'holder in due course' is a person to whom, after its completion by and as between the immediate parties, the bill or note has been negotiated;" and to the effect, also, that the delivery between the original parties is not a negotiation. The inference, of course, is that under the act a payee could not be a holder in due course.

In *Herdman v. Wheeler* (1902) 1 K. B. 361, the defendant signed a blank promissory note and delivered it to A. to be filed in with a certain sum, and to be payable to A. A. fradulently inserted a larger amount and made the plaintiff the payee. Held, that the delivery of the note by A. to the plaintiff was not a negotiation of the note within the meaning of the proviso to section 20, subd. 2, of the B. of E. Act, 1882, as to entitle the plaintiff to recover. The proviso referred to is that such an instrument (i. e., one signed in blank and delivered to another for completion) becomes enforceable if negotiated after completion to a holder in due course. CHANNELL, J., speaking for the court, said (after referring to *Lewis v. Clay*) : "It is quite clear therefore that the expression of opinion of the Lord Chief Justice that a payee was never a holder in due course was a dictum only, and, moreover, as his remarks on the other part of the case appear quite unanswerable, the case could not well have been appealed, and in fact was not appealed; so that his dictum could not well be ques-

tioned in that case. It appears to us that the late Lord Chief Justice overlooked the definition of holder in section 2, which is, 'Holder means the payee or indorsee of a bill or note who is in possession of it, or the bearer thereof.' Therefore, in section 29 [Ala. Code, § 5007], it is necessary to read holder as including payee as well as indorsee, and to read it 'a holder in due course is a payee or indorsee who,' etc. That being so, the only words in section 20 which can be said to indicate that a payee cannot be a holder in due course are those in subdivision 'b': 'And that at the time the bill was negotiated to him he had no notice of any defect in the title of the person who negotiated it.' But if the word 'payee' had been expressed in the earlier part of the section, it would be clear that this means 'if negotiated to him he had at the time no notice, etc.' On the whole, therefore, we are not prepared to hold that a payee of a note can never be a holder in due course; but it is, as it seems to us, just as unnecessary for us to decide that question as it was for the late Lord Chief Justice to do so on the case before him."

The foregoing excerpt will at once mark the limits of the decision, and indicate the disfavor of the court for the sweeping dictum of Lord Russell in *Lewis v. Clay.*

Under conditions substantially the same as in *Herdman v. Wheeler,* the right of a payee of a note, who took for value in good faith and without notice, to recover against the defrauded maker, was again considered in *Llyod's Bank v. Cooke* (1907) 1 K. B. 794, and it was held that he could recover on the principle of common-law estoppel, the integrity of which was not affected, even as to commercial paper, by the B. of E. Act. All three of the judges concurred in the validity of this view; Cozens-Hardy, L. J., expressed a wish "to keep an open mind as to the correctness of the decision in

*Herdman v. Wheeler,"* and Fletcher Moulton, L. J., in an elaborately argued opinion, entirely repudiated the ground of that decision, viz., that "negotiate," as used in the act, means a transfer only from one holder to another. He said, very justly and forcibly: "The contention of the counsel for the defendant amounts therefore to saying that the act has made this important change, viz., that it has taken away the right of a payee to recover under such circumstances, leaving only the right of an indorsee in this respect unchanged. I cannot accept that view. I see no indication in the act of any intention to make such a radical change in the law, a change which does not commend itself to one's sense of justice, and which, if intended, would surely have been made formally and explicitly, and not left to be gathered by mere implication. And, apart from the absence of any indication that such a serious change in the law is intended to be made, there are many things in the act which lead me to the opposite conclusion."

He then undertakes to show that "negotiated," as used in the section defining a "holder" in due course (section 29, subd. 1, Eng. B. of E. Act; Ala. Code, § 5007) is broad enough—as it is defined in section 31, subd. 1 (Ala. Code, § 5138)—to include a transfer, i. e., a delivery with the intention of passing title, from the maker to the payee.

It is thus apparent, notwithstanding these strong expressions from individual judges, that the status of a payee under the Bills of Exchange Act, in the particular under discussion, is not yet definitely settled in England. It is to be noted, however, that in a later English case (*Glenie v. Bruce Smith* [1908] 1 K. B. 263) it is held, without dissent, that under section 30 of the B. of E. Act (Ala. Code, § 5014) the payee of

a bill may be, and prima facie is, a holder in due course, though the application was to a case different from this.

In Canada the views of Channell, J., in *Herdman v. Wheeler, supra,* seem to be strongly approved: "That the plaintiff, though he is the immediate payee of the notes, and did not acquire them by indorsement or transfer from a party other than the maker, is a holder in due course, seems to follow from reading the interpretation section (2 [g]), into section 56, and reading both with section 58 (2). This, though not actually decided, is evidently the opinion of the Court in *Herdman v. Wheeler* (1902) 1 K. B. 361, at page 371, which, on the whole, I see no sufficient reason for not following."—Per Osler, J. A., in *McDonough v. Cook,* 19 Ont. L. R. 267.

In the same case, in a separate opinion, Maclaren, J. A., said: "To my mind the reasoning in *Herdman v. Wheeler,* * * * referring to definition of 'holder' in section 2 (g) as including payee, in *Lloyd's Bank v. Cooke, supra,* at page 806, and at pages 268, 269, is conclusive as to the possibility of a payee becoming a holder in due course."

See, also, *Lilly v. Farrow* (1908) Q. R. 17 K. B. 554, where the Quebec Court of Appeals held that the payee may become a holder in due course.

To the same effect, apparently, is the case of *Knechtel Fur. Co. v. Ideal,* 19 Manitoba Rep. 652.

In the United States the question seems to have been presented in only two of the reported cases.

In the case of a negotiable note signed in blank by the several makers, and then wrongfully filled out by one of them, and delivered to the payee for value and without notice, the Supreme Court of Iowa has held the note to be unenforceable as to the other makers, under the Iowa N. I. Law, on the theory that it was not

negotiated to the payee, citing and following *Herdman v. Wheeler, supra; Vander Ploeg v. Van Zuuk* (1907) 135 Iowa, 350, 112 N. W. 807, 13 L. R. A. (N. S.) 490, 124 Am. St. Rep. 275. But the court also went further and held, not only that the note was not "negotiated" within the meaning of the section governing blank instruments (Ala. Code, § 4791), but also that, without negotiation by transfer from one holder to another, one cannot become a "holder in due course"—thus indorsing the broad dictum of Lord Russel in *Lewis v. Clay*.

Where a wife drew a check in favor of a creditor severally of herself and her husband, and delivered it to her husband to deliver to the payee in payment of her debt, and he delivered it in payment of his debt, and it was so taken by the payee in good faith, the Supreme Court of Massachusetts has held that the payee could recover against the drawer. Says the court: "The fact that the plaintiff is the payee of a negotiable security does not prevent him from becoming a bona fide purchaser of it at common law, with all the rights incident to a purchaser for value thereof without notice. (Citing, among other cases, *Watson v. Russell*, 3 B. & S. 34. 5 B. & S. 968; *Munroe v. Bordier*, 8 Com. B. 862; and *Armstrong v. Am. Ex. Bank*, 133 U. S. 433 [10 Sup. Ct. 450, 33 L. Ed. 747].) * * * The plaintiff is a holder in due course of the $200 check within Revised Laws, c. 73, § 69. This section is taken from section 29 of the English Bills of Exchange Act of 1882 (Ala. Code, § 5007), and *Watson v. Russell* is cited in Chalmers on Bills of Exchange (5th Ed.) 89, as an example of a person who is a holder in due course within that section."

We have been unable to discover any other American or English case in which the question has been discussed.

[Ex Parte Goldberg & Lewis.]

An interesting commentary on the cases above reviewed—especially *Lloyd's Bank v. Cooke* (1907) 1 K. B. 794—will be found in the editor's note to *Vander Ploeg v. Van Zuuk*, 13 L. R. A. (N. S.) 490.

The great importance of the question under consideration will, perhaps, justify the somewhat extended review of principles and authorities which we have here presented. Any one who reads the cases cited will be impressed by the scope which the subject offers for purely verbal dialectics, and, if confined to that narrow view of the subject, might find much difficulty in choosing between the merits of the opposing arguments.

Commercial paper is the common currency of mankind. Without its unhampered use, whether international or domestic, the business of the modern world could scarcely move at all.

The law merchant is essentially the creation of the business world, whose practices have hardened into principles, and these principles have been shaped and polished for centuries by the lapidaries of the law—all to one supreme end, viz., the protection of a bona fide holder for value who has acquired a negotiable instrument in the due course of trade or business. Only such protection can give confidence, and only confidence can give free currency to any medium of exchange. This is the capstone of the structure known as "Commercial Law." Its codification into a uniform Negotiable Instruments Law has been accomplished, not for the purpose of altering any of its essential principles, and certainly not for the purpose of destroying or weakening its cardinal principle, but for the purpose of harmonizing certain minor differences existing in the various jurisdictions.

Keeping all this in mind, we cannot, upon a very full consideration of the language and provisions of the Commercial Code, assent to the view that it has withdrawn from a payee the status of a holder in due course in those cases where he was so regarded and protected prior to its enactment. And we think and hold that subdivision 4 of section 5007, defining a holder in due course, must be construed as applicable to a holder if he be a negotiatee, and not as excluding from the general class all who are not holders by negotiation. It is clear that, if subdivision 4 of section 5007 does not by necessary implication exclude a payee in every case from the status of "holder in due course," there is nothing else in the Code which even suggests that result.

And even if we could not construe subdivision 4 as above indicated, we think it would still be perfectly consonant with reason, and with the general language and purpose of the law, to hold that the definition of a "holder in due course," as expressed in the entire section (5007), was framed with regard only to the usual and ordinary case of negotiatees; and that the occasionally exceptional status of a payee as such is simply a casus omissus, contemplated and provided for by section 5143: "In any case not provided for in this chapter, the rules of the law merchant shall govern."

It might be conceded that "negotiate," as used throughout the act, means always only the transfer from one holder to another, after the instrument has been "issued," as held in *Herdman v. Wheeler* and *Van der Ploeg v. Van Zuuk, supra*—which, however, we do not now attempt to decide—without affecting our judgment in this case.

What we do decide is that the payee of a completed negotiable note to whom it is given for value, without notice, and in the ordinary way of business, by

one of several makers, to whom it has been intrusted by another maker for that purpose—albeit by fraud or upon condition, as in this case—is, as to the obliga-. tion of such other party, a bona fide holder in due course of trade, and is, as for such fraud or breach of authority between the obligors, entitled to enforce the obligation.

This obviously does not infringe the universal rule that, as between immediate parties, the consideration of the instrument and the capacity of the parties may be inquired into; for it only means that one who ostensibly and voluntarily assumes the obligation to pay the note—and this is in part what the payee buys— cannot repudiate his obligation to do so by reason of any secret matters between himself and the person who procured his undertaking.

(2) It may be well to note, in this connection, that section 4973 of the Code, providing that "as between immediate parties, and as regards a remote party other than a holder in due course, the delivery in order to be effectual, must be made either by or under the authority of the party making, drawing, accepting, or indorsing, as the case may be; and in such case the delivery may be shown to have been conditional or for a special purpose only," has reference only to a conditional or special delivery to the payee or holder, of which he is advised at the time, and not to a delivery by an obligor to an agent or intermediary for transmission to the payee.

For the reasons set forth, the judgment of the Court of Appeals will be reversed, and the cause will be remanded for disposition accordingly.

Reversed and remanded. All the Justices concur, except DE GRAFFENRIED, J., not sitting.