(90 South. 304)

MORRISS et al. v. O'CONNOR.　(1 Div. 194.)

(Supreme Court of Alabama. Oct. 27, 1921.)

1. Husband and wife ⬤⇒171(1)—Notes and mortgages executed to secure husband's debt are void.

Under Code 1907, § 4497, providing that the wife shall not, directly or indirectly, become surety for the husband, notes and mortgages executed by a wife on her property to secure her husband's debt are null and void.

2. Husband and wife ⬤⇒169(4)—Wife's mortgage invalid when obtained without consideration.

A mortgage obtained from a married woman without consideration is invalid.

3. Husband and wife ⬤⇒169(4)—Wife's mortgage void when executed under duress to prevent husband's prosecution for alleged crime.

When a married woman executes a mortgage on her property under duress and threats that it is necessary to prevent her husband from being prosecuted, convicted, and sentenced to the penitentiary for an alleged crime, and she is led to believe that the act committed by her husband was criminal, when it was not, and executes the mortgage to prevent the prosecution, the mortgage is void, as the consideration is illegal, and the execution of the mortgage involuntary.

4. Bills and notes ⬤⇒338, 366, 370, 374—Mortgages ⬤⇒258—One purchasing before maturity without notice is holder in due course, and holds free from defenses of want of consideration, duress, or execution for husband's debt.

Under Code 1907, §§ 5007–5014, if defendant became the owner of notes and a mortgage securing them in good faith, and for value, and before maturity, and without notice of any infirmity or defect in the title of the person negotiating them, she was a holder in due course,

and the notes and mortgage in her hands were free from the defenses that they were given under duress, without consideration, or to secure a debt of the maker's husband.

**5. Husband and wife ⌖⇒171(1)—Notes and mortgage held given to secure husband's debt.**

Where plaintiff's husband was indebted to a bank, which was pressing for security, and plaintiff executed notes secured by a mortgage and payable to the bank's nominee, and the husband was given credit therefor, and plaintiff received no cash or credit, the notes and mortgage were void as given to secure directly or indirectly the debt of the husband.

**6. Husband and wife ⌖⇒171(4)—Evidence held to show execution of notes and mortgage under duress to prevent husband's prosecution.**

Evidence held to show that plaintiff executed notes and a mortgage for her husband's indebtedness to a bank of which he had been cashier, involuntarily under mental duress to prevent prosecution of her husband for an alleged crime.

**7. Bills and notes ⌖⇒525—Transferee held not bona fide purchaser without notice of duress, want of consideration, and execution for husband's debt.**

Where plaintiff, without consideration and under duress, and to prevent prosecution of her husband for alleged shortage as cashier of a bank, executed notes and a mortgage which were transferred to the mother-in-law of the bank's vice president, who was familiar with every detail of the transaction, the mother-in-law held under the evidence, not a bona fide purchaser without notice of their legal infirmities.

Appeal from Circuit Court, Mobile County; Joel W. Golsby, Judge.

Bill by Mary A. O'Connor against Mrs. E. H. Morriss and another to cancel mortgage because given to secure her husband's debt and because obtained under duress and coercion. From a decree granting the relief prayed, the respondent Morriss appeals. Affirmed.

Inge & Kilborne, of Mobile, for appellant.

Knowledge acquired by Staples in discharge of his duties as vice president of the bank cannot be imputed to the respondent, although he subsequently became her agent. 185 Ala. 221, 64 South. 82; 201 Ala. 497, 78 South. 851; 31 Cyc. 1447; 99 Ala. 612, 12 South. 810; 14 Ala. 84; 83 Ala. 401, 3 South. 796; 204 Ala. 520, 86 South. 392; 125 Ala. 313, 28 South. 35; 174 Ala. 190, 56 South. 726, L. R. A. 1918B, 924; 126 Ala. 116, 28 South. 37; 82 Ala. 158, 2 South. 758, 60 Am. Rep. 736. The mortgage was not without adequate consideration. 163 Ala. 657, 50 South. 997. Complainant must offer to do equity. 92 Ala. 163, 9 South. 143, 13 L. R. A. 299; 97 Ala. 483, 12 South. 55; 99 Ala. 281, 12 South. 775, 42 Am. St. Rep. 58; 203 Ala. 561, 84 South. 267. A wife may substitute her primary obligation, and become bound, and her husband released. 189 Ala. 381, 66 South. 707.

Harry T. Smith & Caffey, of Mobile, for appellee.

The mortgage was executed by the wife to secure the debt of the husband, and the decree was proper. 194 Ala. 687, 70 South. 115; 197 Ala. 352, 72 South. 538; 176 Ala. 339, 58 South. 258. The mortgage was executed under duress and coercion. 163 Ala. 665, 50 South. 997. The purchaser obtained only an equity in the mortgage, and the doctrine of bona fide purchaser was valid is without application. 86 Ala. 345, 5 South. 679, 11 Am. St. Rep. 41; 176 Ala. 339, 58 South. 258; 140 Ala. 577, 37 South. 409.

MILLER, J. Mary A. O'Connor, wife of Thomas J. O'Connor, files this bill against Mrs. Emma H. Morriss to cancel and annul a mortgage, a note for $5,000 principal, and several interest notes, all secured by the mortgage, on her home and other real estate. She seeks their cancellation because they were given by her to secure her husband's debt; they were obtained by duress and without consideration. The defendant by answer avers she paid $5,000 cash for said notes and mortgage; that they were made and payable to a third person; and that she is a bona fide purchaser of them before they matured without any notice that they were given as security for her husband's debt or that they were obtained under duress or without consideration.

[1] Notes and mortgages executed and delivered by a wife on her property to secure the debt of the husband, directly or indirectly, are violative of the statute and null and void. "The wife shall not, directly or indirectly, become the surety for the husband." Section 4497, Code 1907; Heard v. Hicks, 82 Ala. 484, 1 South. 639; Vinegar Bend Lbr. Co. v. Leftwich, 197 Ala. 352, 72 South. 538; Lamkin v. Lovell, 176 Ala. 339, 58 South. 258.

[2, 3] A mortgage obtained from the wife without consideration is invalid. Thompson v. Hudgins, 116 Ala. 93, 22 South. 632. When a wife executes a mortgage on her property to secure or pay debt under duress and threats that it is necessary to prevent her husband from being prosecuted, convicted, and sentenced to the penitentiary for a crime, and the wife is led to believe the act committed by her husband was criminal, but which was not, and she consented and executed the mortgage to prevent the prosecution, this would render the mortgage void. The consideration, to prevent the prosecution of her husband for an alleged crime, would be illegal and render the mortgage void. The mortgage would not be voluntary. It would have the form, but not the genuine substance,

---

⌖⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

of a valid contract. Holt v. Agnew, 67 Ala. 361; Glass v. Haygood, 133 Ala. 494, 41 South. 973; Martin v. Evans, 163 Ala. 657, 50 South. 997.

[4] These notes and mortgages are complete and regular on their face; the notes are payable to the Title Insurance Company, and it is named in the mortgage as mortgagee. If the defendant became the owner of them in good faith and for value, and before maturity, and at the time it was negotiated to her she had no notice of any infirmity or defect in the title of the person negotiating them, then she would be a holder in due course under the statute. As such, her rights would be protected, and the mortgage enforced to pay the notes secured by it, even if they were given under duress, or without consideration, or to secure a husband's debt, the defendant having no notice thereof before she purchased them. If she is a holder in due course, the instruments, notes, and mortgage are "free from any defect of title of prior parties, and free from the defenses available to prior parties among themselves." Sections 5007–5014, Code 1907; Bruce v. Citizens' Nat. Bk., 185 Ala. 221, 64 South. 82.

"It is well settled that, in order for the knowledge or information of an agent to be binding upon the principal, it must be acquired by the agent while transacting the business of his principal in the scope of his duties." Bruce v. Citizens' Nat. Bk., 185 Ala. 221, 64 South. 82.

The defendant claims and avers, if she is not a bona fide holder of the notes and mortgage, then the mortgage secures debts of complainant to the Bank of Mobile, owned by defendant as follows: One note for $472.49, and another for $1,210.13—and that she should be protected through the mortgage to the amount of said debts of complainant.

If these debts were bona fide due the bank by complainant, and the mortgage secured them, and defendant now owns them, the mortgage would be valid and binding as to this amount.

The evidence is conflicting on every material issue in some respects, stronger on some issues than others, some being strikingly strong on each side. There are always in the evidence blazes that direct the traveler trying to trail the path to find the place where truth resides. The earmarks of truth appear here and there in the testimony in all cases to direct the court or jury, searching for it, to find the facts on which a decree or verdict can safely rest. There is much testimony in this case. It would consume too much time, make this opinion too long, and serve no good purpose to refer to all of it, analyze it out, and show all of its bearings. So we will refer only to the "blazes on saplings" and "earmarks" in the testimony. The weight of evidence will be near or around them. The facts, when found, should be applied to the law hereinbefore stated, and a decree rendered in accord with both.

[5] Were this mortgage and these notes given by complainant to secure her husband's debts directly or indirectly? Her husband was cashier of the Bank of Mobile. A. L. Staples was vice president. The husband owed the bank about $17,000. Staples was pressing for this mortgage, and directed that it be made to the Title Insurance Company, so it could be "transferred to whomever we designated after we found somebody who would lend the money." It was made to the Title Insurance Company. It paid complainant nothing for the notes or mortgage, and had no interest in it. The mortgage and notes were executed July 20, 1916. On August 24, 1916, the Bank of Mobile credited Thomas J. O'Connor's account with "dep. O'Connor mortgage $5,000.00," and on September 14, 1916, charged him, "check recording mortgage, $5.86." The complainant received no cash on this mortgage and no credit at the bank. It was also placed to the credit of her husband, and a statement of his account was mailed to him by Staples, the vice president, on September 19, 1916, showing total debits $17,877.97, and $17,877.97 total credits. Said items, "dep. O'Connor's mortgage $5,000.00" credit and "check recording mortgage $5.86" debit, were on the statement. The complainant saw the statement and made no objection to it to the bank. This mortgage and these notes remained in possession of the bank until after this suit was commenced on July 3, 1919, and in a few days thereafter they were transferred and indorsed without recourse by the Title Insurance Company to the defendant. These notes and mortgages were given to secure, directly or indirectly, her husband's debt.

[6] Were these notes and mortgage executed under duress from the Bank of Mobile by the complainant? The husband of complainant had been cashier of the bank for about 13 years. He owed the bank about $17,000. He left the bank, or was discharged. Mr. Staples informed the husband, the complainant, and her sister that he had violated the law, technically, and was subject to go to the penitentiary, and that the mortgage would have to be made and the indebtedness covered to prevent prosecution. There was evidence that complainant earnestly requested that no mortgage be required of her. There was evidence that the bank's business at the time was being examined by an expert accountant of the government. Under the direction of Mr. Staples the notes and mortgage were made payable to the Title Insurance Company. The examiner reported O'Connor short and reported the shortage to the district attorney. Mr. Staples testified:

"At the request of Mr. and Mrs. O'Connor I did everything I could to get the means to keep him out of trouble. I had the board of directors of the bank to vote him $2,500 for his

services. Capt. James Feore and myself loaned him $3,800 out of our own pockets, which we have never received and did not get any interest on it, and that left him short $4,000 or $5,000."

His testimony was in conflict with Mrs. O'Connor, complainant, and her sister in regard to the necessity for the mortgage to be made to prevent prosecution and penitentiary punishment. This statement of the bank of the account of O'Connor shows September 14, 1916, deposits cash (stock) $1,675, cash (bank) $2,500, cash $3,800. It shows August 24, 1916, deposit Logan note $3,000 and a charge August 25, 1916, "recording mortgage J. N. Logan, $6.25." J. N. Logan is a sister of complainant. It was credited August 24, 1916, the same day the $5,000 credit was made of complainant's mortgage. These are some of the circumstances and conditions surrounding complainant when she executed the $5,000 note and mortgage on her home and other property. The evidence clearly discloses the notes and mortgage of complainant were signed involuntarily under mental duress to prevent a prosecution of her husband for an alleged crime.

[7] Was Mrs. Morriss, the defendant, a bona fide purchaser of $5,000 note and mortgage? Did she, or her agent, Mr. Staples, while transacting this business of his principal in the scope of his duties, know that said notes and mortgage were given directly or indirectly by complainant to secure her husband's debt, or that they were executed involuntarily under mental duress to prevent prosecution of her husband for an alleged shortage, or were they without consideration? Mr. Staples, the vice president of the bank, is her son-in-law. She has been a widow for 10 years, during which time she has resided in his home with him and her daughter. All of that time he has been and is still her general business agent. She said he was her agent in this transaction. She knew T. J. O'Connor. The testimony shows Mr. Staples' familiarity with every detail of the $5,000 note and mortgage transaction of complainant. The testimony of Mrs. Morriss and Mr. Staples was indefinite at first as to how, when, and manner the $5,000 was paid. He testified at last that she gave her individual check for $5,000 to him. It was payable to the Bank of Mobile, and drawn on the Bank of Mobile, and he turned it over to the bank, and "they credited the bills payable account with that and took out two notes of Mrs. O'Connor and applied the balance on Mr. O'Connor's notes." The statement rendered T. J. O'Connor by the bank with the $5,000 O'Connor mortgage credited on it hereinbefore referred to has the said $472.49 note and said $1,210.13 note of complainant charged on August 24, 1916, to his account, and these notes are attached as exhibits to the testimony of Mr. Staples. Mr. Staples testified that defendant knew

Mrs. O'Connor was the person who wanted to borrow the money. This $5,000 check was not introduced in evidence. It was said to be lost. The stub was said to be in existence, but was not introduced in evidence. The testimony stated it was drawn individually by defendant payable to and drawn on the Bank of Mobile; but no record evidence by books or accounts of the bank showing a $5,000 check of defendant charged to her individual account was introduced in evidence. This check was not payable to complainant; it was not deposited to the account of the complainant; the complainant never saw it. The defendant's agent, knowing all the facts and circumstances, testified that defendant gave it to him, that he gave it to the bank, and, "Yes; they credited the bills payable account with that and took out two notes of Mrs. O'Connor, and applied the balance on Mr. O'Connor's notes." Mr. Staples or the bank retained the notes and mortgage in the bank until this bill of complaint was filed; then the Title Insurance Company transferred them to the defendant without recourse and without dating. The recording fee of this mortgage was not paid by or charged to the defendant or complainant, but the $5,000 mortgage was credited to and the recording fee charged to the account of T. J. O'Connor on the books of the Bank of Mobile.

It appears from the evidence that the defendant is not a bona fide purchaser for value of these notes and mortgage. It appears the defendant, personally, or her agent, Mr. Staples, while transacting the business of his principal, in the scope of his duties, knew of the legal infirmities of the notes and mortgage before she contracted for them. The $472.49 note and the $1,210.13 note were signed by complainant. They were payable to the Bank of Mobile. The husband of complainant delivered them to the bank. They were retained by the bank, not delivered to her, and are attached as exhibits to the testimony of the vice president, Mr. Staples. True, complainant may have considered this $5,000 mortgage was given to secure said notes. From the evidence these notes were given by complainant to secure directly or indirectly her husband's debt to the bank, and the evidence indicates that the bank so held and applied them; and they are therefore under the evidence rendered invalid by the statute.

The $5,000 mortgage and the notes described in the bill of complaint as amended were given by complainant on her property to secure her husband's debt; they were executed under mental duress to prevent criminal prosecution of her husband and without consideration; the defendant is not a bona fide purchaser of them without notice of their legal infirmities before maturity; hence they are null and void, and should be canceled on the records in the probate office

206 ALA.—35

of Mobile county, and the originals surrendered to the register of the court for the complainant.

This court concurs in the decree rendered by the trial court, which is in accord with this opinion, and this cause is therefore affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.