SMITH v. D. ROTHSCHILD & CO. et al.
(4 Div. 102.)

(Supreme Court of Alabama. June 26, 1924. Rehearing Denied Dec. 4, 1924.)

1. Husband and wife &#8658;87(3)—Form of transaction disregarded in determining whether wife became surety for husband.

Equity will look through form to substance in determining whether Code 1907, § 4497, forbidding wife directly or indirectly becoming husband's surety, has been violated.

2. Bills and notes &#8658;362—Creditors negotiating loan by bank on debtor's wife's lands not bona fide purchasers of mortgage from bank taking it in good faith.

Creditors negotiating with bank for loan to debtor on lands of latter's wife, and later refunding money to bank, or purchasing notes, mortgage and title to lands from it as part of original purpose to avoid Code 1907, § 4497, forbidding wife from becoming husband's surety, are not bona fide purchasers, though mortgage was taken by bank in good faith and transferred by it before maturity.

On Rehearing.

3. Bills and notes &#8658;362—Assignees with notice of infirmity from assignor without notice not holders in due course.

Under Code 1907, §§ 5007, 5010, 5011, 5013, assignees of notes and mortgage, with notice of infirmity therein, from original assignee not so charged, are not holders in due course.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Holder in Due Course.]

Appeal from Circuit Court, Bullock County; J. S. Williams, Judge.

Bill in equity by Mary A. Smith against D. Rothschild & Co. and the individual members of the partnership, to enjoin the prosecution of an action at law and for cancellation of a deed and mortgage. From a decree sustaining demurrer to the bill, complainant appeals. Reversed and remanded.

Blue & Blue, of Union Springs, for appellant.

Where the wife conveyed her separate property to her husband, and joined with him in a mortgage thereof to secure his debt, with knowledge on the part of the mortgagee of her rights in the premises, the transaction is void. Code 1907, § 4497; Vinegar Bend L. Co. v. Leftwich, 197 Ala. 352, 72 So. 538; Hall v. Gordon, 189 Ala. 301, 66 So. 493; Elkins v. Bank, 180 Ala. 18, 60 So. 96; Lamkin v. Lovell, 176 Ala. 334, 58 So. 258; Staples v. City Bank & T. Co., 194 Ala. 687, 70 So. 115; Evans v. Faircloth-Byrd Mer. Co., 165 Ala. 176, 51 So. 785, 21 Ann. Cas. 1164. Equity looks to the substance, and not the surface. Richardson v. Stephens, 122 Ala. 301, 25 So. 39; McNiel v. Davis, 105 Ala. 657, 17 So. 101; Henderson v. Brunson, 141 Ala. 674, 37 So. 549. Indirectness of the transaction here does not constitute the creditor a bona fide purchaser. Elba B. & T. Co. v. Blue, 203 Ala. 524, 84 So. 748.

R. E. L. Cope, of Union Springs, and James J. Mayfield, of Montgomery, for appellees.

The statute does not prohibit the wife from giving or selling her property to her husband, nor from selling it to another and applying the proceeds to the payment of his debts. Sample v. Guyer, 143 Ala. 613, 42 So. 106; Maxwell v. Herzfeld, 149 Ala. 67, 42 So. 987; Gibson v. Wallace, 147 Ala. 322, 41 So. 960; Grayson v. DuBose, 168 Ala. 378, 52 So. 923. If a purchaser for value without notice sells to a purchaser who has notice, or even a volunteer, the latter is protected. Travelers' Ins. Co. v. Lazenby, 202 Ala. 207, 80 So. 29; Wilkinson v. Solomon, 83 Ala. 438, 3 So. 705; 12 Michie's Ala. Dig. 775; Alexander v. Pendleton, 8 Cranch. 462, 3 L. Ed. 624; 19 R. C. L. 410; 33 R. I. 177, 80 A. 415, Ann. Cas. 1913B, 407; Wilkinson v. Solomon, 83 Ala. 438, 3 So. 705.

THOMAS, J. The bill is to declare void deeds and mortgage on the wife's property as procured and given in securing the husband's debts. The injunctive relief prayed against a pending suit in ejectment is denied in the sustaining of respondents' demurrer to the bill.

The statute has often been construed, and forbids the wife, directly or indirectly, to become surety for the husband. Code, § 4497; Leath v. Hancock, 210 Ala. 374, 98 So. 274; Morriss v. O'Connor, 206 Ala. 542, 90 So. 304; Little v. People's Bank of Mobile, 209 Ala. 620, 96 So. 763; Vinegar Bend Lumber Co. v. Leftwich, 197 Ala. 352, 72 So. 538. It is averred in the bill that the several conveyances and procedure thereunder were all parts and parcels of one transaction by which respondents undertook to have complainant indirectly become surety for her husband, and that each of said deeds and mortgage is void under the provisions of said statute. It is further averred that complainant's "husband, G. W. Smith, was large-

---

ly indebted to respondents as well as other persons, firms, and corporations, and desired to secure or arrange for an extension of said debts, and that the members of respondent partnership knew that security could not be given said partnership, or that said debts could not be secured, unless the same could be accomplished by the means hereinafter recited, and also knowing that a mortgage executed by complainant and her said husband upon her separate property, for the purpose of securing said debts, would be void, suggested to the said G. W. Smith, husband of complainant, that he first have her deed her lands to him, and then join with him in the execution of the mortgage hereinafter mentioned and described; or, if the said members of said partnership did not make such suggestion, they did know that complainant was the wife of said G. W. Smith, and that the plan to have her become indirectly the surety for the said debts of her husband was to be accomplished, in the manner hereinafter shown"; that "complainant further and again alleges that her deed to her said husband, and the said mortgage executed by him, in which she joined, to said Merchants' & Mechanics' Bank, the transfer and assignment of said mortgage to respondents, and its subsequent foreclosure under the power of sale contained therein, and the deed executed to respondents by said auctioneer, all conveying said above-described lands, were all parts and parcels of one and the same transaction, by which respondents undertook to have complainant indirectly become surety for the debts of her husband, and further avers that each of said deeds and said mortgage was and is void under the provisions of section 4497 of the Code of Alabama of 1907, and each is a cloud upon complainant's title to the lands described in the second paragraph of this bill."

In Vinegar Bend Lumber Co. v. Leftwich, 197 Ala. 352, 72 So. 538, it was held:

"Where the wife borrows money from her husband's creditor, and hands it back in payment of her husband's debt, thus becoming nominally the principal debtor on a new obligation, she becomes by indirection a surety of her husband's debt within the provision of section 4497, Code 1907.

"Where the wife conveyed her separate property to the husband and joined with him in the mortgage thereof to secure his debt, with the knowledge by the mortgagee of her rights in the premises, the transaction was void as violative of section 4497, Code 1907."

It is also held that where the wife conveys her separate property to the husband and joins with him in the mortgage thereof to secure his debts, the mortgagee having knowledge of her rights in the premises, the statute is violated. Staples v. City Bank & Trust Co., 194 Ala. 687, 70 So. 115; Evans v. Faircloth-Byrd Mer. Co., 165 Ala. 176, 51 So. 785, 21 Ann. Cas. 1164; Lamkin v. Lovell, 176 Ala. 334, 58 So. 258; Elkins v. Bank of Henry, 180 Ala. 18, 60 So. 96; Hall v. Gordon, 189 Ala. 301, 66 So. 493.

Looking to the substance rather than the appearance, as equity does, to uncover the truth or facts (Richardson v. Stephens, 122 Ala. 301, 25 So. 39; Elba Bank & Trust Co. v. Blue, 203 Ala. 524, 84 So. 748; Henderson v. Brunson, 141 Ala. 674, 37 So. 549; McNeil v. Davis & Son, 105 Ala. 657, 17 So. 101), the facts averred, if proved, will disclose an evasion of the statute which makes the wife indirectly secure the husband's debt.

The statement has been made that the negotiation of a loan through a collusive arrangement with a third person, whereby the wife becomes surety for the loan with which the debts of the husband are paid, and the ultimate purchase of the securities for said loan by the original creditor, does not constitute the said creditor a bona fide purchaser, and the indirectness of the transaction does not cure the invalidity. In Lamkin v. Lovell, supra, Mr. Justice Sayre said:

"But where, as here, it is entirely clear that the transaction is different from what it purports to be, where the parties move circuitously to the end in view, as if to evade the statute, and where the true intent and meaning of what the wife does is to give her obligation, payable in the future and secured by a mortgage, to the husband's creditor—all facts established in this case beyond peradventure—the necessary effect is to constitute the wife's note and mortgage a collateral security for the husband's debt."

[1] The language of the statute is that "the wife shall not, directly or indirectly, become the surety for the husband." Code, § 4497. Equity's invariable process is to look through form to substance. No superficial appearance will be permitted to lead the court away from the truth of the transaction to avoid the statute if such be its effect and purpose.

In Staples v. City Bank & Trust Co., 194 Ala. 687, 689, 70 So. 115, 116, the fundamental distinction is made between a loan secured from the husband's creditor and one secured from a third person who is not interested in the disposition of the fund; and it is said:

"If the debt sought to be enforced against the wife, or any part of it, was infected with this vice in its inception, the infection remains, regardless of renewals or changes of form. And so, with respect to the method by which the proceeds of the loan are returned to the hands of the lender, it is of no consequence whether the payment of the husband's debt is open and direct, or whether the money passes to the creditor through intermediates chosen for the purpose. The law looks to the intention and the result, and not to the means employed."

[2] It is charged in the bill, through facts averred, that the bank in this case was a mere conduit, and the passing of the notes and mortgage and its foreclosure through and by the bank cannot impute validity. The circumstances of the transaction averred will tend to arouse suspicion of the evasion of the statute. Elba Bank & Trust Co. v. Blue, 203 Ala. 524, 84 So. 748. That is to say, if respondents negotiated the loan for the husband with the bank in Columbus, Ga., on complainant's lands in Alabama, later refunded the money to the bank, or purchased from it the evidences of the loan, security, and title to the said lands—if this procedure was a part of the original purpose, it does not make respondents bona fide purchasers, but points to a circuitous method by which the benign influence of the statute may be avoided. It is within the influence of Vinegar Bend Lumber Co. v. Leftwich, 197 Ala. 352, 72 So. 538, and Morriss v. O'Connor, 206 Ala. 542, 90 So. 304.

The decree sustaining demurrer to the bill was laid in error. The facts should be considered under the statute, after full pleading and proof.

The decree is reversed and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and BOULDIN, JJ., concur.

On Rehearing.

THOMAS, J. In addition to the foregoing authorities see Rollings v. Gunter (Ala. Sup.) 101 So. 446,[1] where the leading authorities on section 4497 of the Code are collected.

In view of the reasons assigned in the decree on demurrer as to the obligation being a "commercial paper," the observation should be made that we have here to do with the right of a creditor who is alleged to have moved circuitously to evade the statute, having the mortgage taken by a third party (in good faith), and by it transferred before maturity to said creditor. The third party here employed is not a defendant to the instant bill, nor is it charged that it knowingly participated in the circumvention of the statute. Are the averments of the original bill sufficient to bring the case within the principle so well stated by Mr. Justice Sayre in Lamkin v. Lovell, 176 Ala. 334, 58 So. 258? The writer believes that it is so ruled on principle, though it was charged in the Lamkin-Lovell Case that the mortgagor and creditor procured Colonel Harris, who had no concern about their purposes, to lend complainant (the wife) the sum desired on the security of her note and mortgage, "the un-

derstanding being" that the creditor "would, soon as he desired, reimburse him and take an assignment of the note and mortgage without recourse"; the money was paid to the wife by check which she indorsed to the creditor.

The instant case is therefore different from the Lamkin-Lovell Case, supra, in that in the latter there was understanding between the creditor and the third party for his immediate reimbursement, while no such understanding is averred in the instant bill; and the proceeds of the mortgage in the Lamkin-Lovell Case were paid by Harris to the wife by check, which she indorsed to the creditor; here the proceeds of the mortgage were paid to the husband, who distributed the same to the creditors, etc. That is to say, of the instant bill, the parties (the husband and his creditor—the assignee of the mortgage) are averred to have resorted to an evasion of the statute by the wife's giving her obligation, secured by a mortgage on her property, the effect of which was an indirect security by the wife for the husband's debts—notwithstanding the fact that the security was taken in good faith by a third party at the instance of the husband to secure the moneys to pay the debt, and by such third party transferred, before maturity, to such creditor, who foreclosed the mortgage.

[3] A phase of the case or questions of law entering into this decision are presented by the citation of Wilkinson v. Solomon (1887), 83 Ala. 438, 3 So. 705, which were not discussed on the original hearing. The effect of that decision, under the facts stated, is that a bona fide purchaser may sell and convey a perfect title to one who has notice of the equity, etc. The payment of the note and mortgage in said case was about, or shortly after the maturity of the note secured by the mortgage from which the plaintiff derived title to the property in controversy, and the mortgage was delivered to the mortgagor and in his possession when the mortgaged property was purchased. And, under this case last cited, a purchaser for value of the mortgaged property from said mortgagor in possession of the mortgage, and who represented that he had paid the mortgage and was in its rightful possession, was protected. The decision concludes with the statement that the subpurchaser (with notice and knowledge of the invalidity of the payment of the mortgage) from the purchaser (without notice and knowledge) was protected. The citation of the Wilkinson-Solomon Case, supra, in Barron v. Hughes, 202 Ala. 207, 80 So. 29, was not under facts as are averred in the instant bill; and it was in a suit for partition of land between joint owners. Neither of these decisions has application to the facts averred in this bill and under the present statute, nor were they in controversies

---

[1] 211 Ala. 671.

growing out of section 4497 of the Code of 1907.

It was recently held that the mortgage securing the note is a mere incident, follows the assignment of the note, and is impressed with the same character and "quality of right." Fortson v. Bishop, 204 Ala. 524, 86 So. 399, and Morriss v. O'Connor, 206 Ala. 542, 90 So. 304. In this last-cited case the question of a holder in due course of the wife's note and mortgage on her lands as security for the husband's debt was considered (Morriss v. O'Connor, 206 Ala. 542, 544, 90 So. 304, 305), and it was there declared:

. "These notes and mortgages are complete and regular on their face; the notes are payable to the Title Insurance Company, and it is named in the mortgage as mortgagee. If the defendant became the owner of them in good faith and for value, and before maturity, and at the time it was negotiated to her she had no notice of any infirmity or defect in the title of the person negotiating them, then she would be a holder in due course under the statute. As such, her rights would be protected, and the mortgage enforced to pay the notes secured by it, even if they were given under duress, or without consideration, or to secure a husband's debt, the defendant having no notice thereof before she purchased them. If she is a holder in due course, the instruments, notes, and mortgage are 'free from any defect of title of prior parties, and free from the defenses available to prior parties among themselves.' Sections 5007–5014, Code 1907."

Construing the pleadings most strongly against the pleader as to the form of the notes for which the mortgage was given as security, we may inquire when one is a holder "in due course" of "instruments, notes, and mortgage" held "free from the defenses available to prior parties among themselves." The statute defines a holder in due course of a negotiable instrument to be (1) when it is complete and regular upon its face; (2) when it is taken "in good faith" and for value before it .was due and without notice of its previous dishonor, if such be the fact; (3) when, *at the time it was negotiated*, the purchaser had no notice "of any infirmity" in the instrument, or of any "defect in the title of the person negotiating it." Code 1907, § 5007. A defective title is thus defined by the statute:

"The title of a person who negotiates an instrument is defective within the meaning of this chapter when he obtained the instrument, or any signature thereto, by fraud, duress, or force and fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith, or under such circumstances as amount to a fraud." Code 1907, § 5010.

. To constitute notice of infirmity in the instrument or defect in the title, "the person in whom it is negotiated must have had ac-

tual knowledge of the infirmity or defect, or knowledge of *such facts that his action in taking the instrument amounted to bad faith.*" Code 1907, § 5011. (Italics supplied). The rights and disabilities of a holder not in due course are defined by the statute of August 9, 1907 (Gen. Acts, p. 660 et seq.), codified as section 5013 of the Code of 1907, as follows:

"In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were nonnegotiable. But a holder who derives his title through a holder in due course, and who is not himself a party to any fraud or illegality affecting the instrument, has all the rights of such latter."

In Ex parte Goldberg & Lewis, 191 Ala. 356, 360, 67 So. 839, L. R. A. 1915F, 1157, and Elmore County Bank v. Avant, 189 Ala. 418, 66 So. 509, it was held that an original indorsee, with notice of the infirmity or without actual knowledge of the same, yet having such actual knowledge of facts which, if pressed, would lead .to an actual knowledge, was charged, etc. See, also, Sandlin v. Maury Nat. Bk., 210 Ala. 349, 98 So. 190. What then is the status of an assignee with notice or knowledge from an original assignee not so charged? Before the Negotiable Instruments Law, the general rule was that stated in Wilkinson. v. Solomon, 83 Ala. 438, 3 So. 705. In Fortson v. Bishop, 204 Ala. 524, 525, 86 So. 399, 400 (the first case by this court to cite and apply the Uniform Negotiable Instruments Law), the bill was filed by Bishop against W. S. Fortson, the bank of Albertville (the first assignee), Sherman (the second assignee), and W. A. Fortson, to disaffirm foreclosure under power of sale. The facts there stated were:

" * * * That at the time Bishop bought the land from W. A. Fortson and received his warranty deed, there was an outstanding superior seasonably registered mortgage on a part of the land, executed by W. A. Fortson and wife to Mrs. P. F. Pope, securing a note for $450, with interest. Before the maturity of Bishop's note and mortgage to W. A. Fortson, he assigned this negotiable note, secured by the mortgage, to the bank of Albertville, the bank assigned to Sherman, and Sherman, after maturity, assigned to W. S. Fortson, appellant.

"The disaffirming redemptioner, under the thus re-established equity of redemption resulting from Bishop's mortgage to W. A. Fortson, invoked the court to so adjust, to toll, the amount necessary to effect such redemption by the amount necessary to satisfy the Pope mortgage—superior and outstanding at the time Bishop purchased the land from W. A. Fortson—to which Bishop appears to have succeeded by a conditional assignment from Mrs. Pope. ..he basis of Bishop's claim is predicated of the breach of warranty in the deed (Code, § 3421) from W. A. Fortson to Bishop, because of the outstanding superior incumbrance imposed upon part of the land by the earlier mortgage ex-

ecuted to Mrs. Pope by W. A. Fortson, Bishop's grantor—a covenant that was breached as soon as made."

The court there said of the statutes:

"It was not averred or shown that appellant or Sherman or the bank was a party 'to any fraud or illegality affecting the instrument,' within the purview of Code, § 5013. Brannan's Uniform Negotiable Instruments Law, pp. 204 et seq., and notes.

" * * * If Sherman became a holder in due course, invested with the right to the protection the law accords to a bona fide purchaser, the appellant became invested with the like rights, nothing being attributable to him to conclude against his succession to Sherman's rights in the premises."

This is in line with the analysis of the present statute so well made in Ex parte Goldberg & Lewis, 191 Ala. 356, 369, 67 So. 839, L. R. A. 1915F, 1157. The change in the statute is also indicated in Vogler v. Manson, 200 Ala. 351, 76 So. 117. See, also, Cannon v. Dillehay, 17 Ala. App. 294, 84 So. 549.

Under the instant pleadings the Merchants' & Mechanics' Bank was not a necessary party, and the averments of the bill are to the effect that at the time respondents acquired the notes and mortgage they had notice of the infirmity in the instruments in question. They cannot qualify as "holders in due course" from the bank, a "holder in due course." Fortson v. Bishop, 204 Ala. 524, 86 So. 399; 39 Cyc. 1774b, note 50; 8 C. J. 468, note 35; Weil v. Carswell, 119 Ga. 873, 47 S. E. 217.

The application for rehearing is overruled.

All the Justices concur.

